WILLIAM D. ELLIS, Respondent, v. THE ALBANY CITY FIRE INSURANCE COMPANY, Appellant.

An unrestricted authority to an agent of a fire insurance company to negotiate a contract of insurance by issuing a policy, includes authority to make a valid preliminary contract for such issue; and a parol agreement to that effect upon his part, and the receipt of the premium therefor binds the company.

One McC. was agent for several insurance companies, including defendant. Plaintiff applied for insurance upon a quantity of cotton; the amount to be insured and the premium was agreed upon, and McC. agreed to insure as requested. Plaintiff left it to McC. to determine in what companies he would place the insurance and the amount in each. He decided to place $6,100 with defendant and entered the contract to that effect in his register, received the premium and credited amount to defendant, and before loss reported and paid over to defendant. *Held*, that this was, in substance, a contract to issue a policy for the amount so placed, and was binding upon defendant. (RAPALLO, ALLEN and ANDREWS, JJ., dissenting.)

(Argued November 11, 1872; decided November 26, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order denying motion for a new trial and directing judgment in favor of plaintiff upon verdict. (Reported below, 4 Lans., 433.)

This action was brought upon an alleged contract of fire insurance upon a quantity of cotton at Appalachicola, Florida.

In November, 1865, C. F. McCoy was appointed agent of

the defendant at Augusta, Georgia, under a power of attorney which described the extent of his agency as follows: "As agent he is authorized and empowered to receive proposals for insurance against loss or damage by fire, and to make insurance by policies of the said Albany City Fire Insurance Company, to be countersigned by the said C. F. McCoy, and to renew the same; to assent to assignments and transfers, and to do all lawful acts and business pertaining to said agency which may, from time to time, be given him in charge by said company."

McCoy was also agent for several other insurance companies. McCoy received from defendant a quantity of blank policies signed by its president and secretary.

In January, 1866, he agreed to insure for plaintiff a quantity of cotton by steamer to and at Appalachicola for $26,000; no companies were designated. McCoy placed $6,100 of the amount with defendant, and made an entry upon his register.

| No. of policy. | Name of assured. | Term. |
|---|---|---|
| 62.   21,817. | W. D. Ellis. | 1 month. |

| Commencement of risk. | Expiration of risk. |
|---|---|
| January 15, 1866. | February 15, 1866. |

| Copy of policy. | Amount insured. |
|---|---|
| On cotton at Appalachicola. | $6,100. |

|  | Premium. |
|---|---|
| Rate ¾. | $45 75. |

The premium was paid. It was forwarded to defendant with other premiums in the fore part of February and receipt acknowledged. The property was damaged by fire February 15, 1866, at 7 A. M. No policy was issued until after the fire, when a policy was made out and delivered to plaintiff. Further facts appear in the opinion.

At the close of the trial the court directed a verdict for plaintiff, exceptions to be heard at first instance at General Term.

*Amasa J. Parker* for the appellant. Where the agent of an insurance company, acting under a written limited authority, exceeds that authority, the act is unauthorized and void. (*Stringham* v. *St. Nicholas Ins. Co.*, 37 How., 365; S. C., 3 Keyes, 280; *Bentley* v. *Columbia Ins. Co.*, 17 N. Y., 421; *Wall* v. *Home Ins. Co.*, 8 Bosw., 597; *Chase* v. *Hamilton Ins. Co.*, 22 Barb., 527; 1 Wait Law and Prac., 216; *Wilson* v. *Genesee Mutual Ins. Co.*, 14 N. Y., 418; *Andrews* v. *Kneeland*, 6 Cowen, 354; 2 Grant's Cases, 470; 2 Kent's Com., 620, marg.) The unauthorized act of McCoy was never ratified by the defendant. (*Seymour* v. *Wyckoff*, 6 Seld., 213; *Nixon* v. *Palmer*, 4 id., 398; S. C., 4 id., 401.)

*Samuel Hand* for the respondent. It was not necessary that a written policy should be executed. Every requisite for a valid contract was satisfied. (*Kelly* v. *Commonwealth Ins. Co.*, 10 Bosw., 82; 19 How. [U. S.], 318; 43 Barb., 356, 364; *Pratt* v. *Hudson River Railroad*, 21 N. Y., 314; 43 Barb., 364; 21 id., 314; *Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 id., 305; *Commercial Mutual Insurance Company* v. *Union Mutual Insurance Company*, 19 How. [U. S.], 318; *Bunten* v. *Orient Mutual Insurance Co.*, 8 Bosw., 446; *Audubon* v. *Excelsior Ins. Co.*, 27 N. Y., 216; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351; *Chase* v. *Hamilton Ins. Co.*, 22 id., 527, reversed in Court of Appeals, but on another point.) The making of this contract was within the power of McCoy the agent. (*Sanborn* v. *Fireman's Ins. Co.*, 16 Gray, 448; *Kelly* v. *Commonwealth Ins. Co.*, 10 Bosw., 82; *Baptist Church* v. *Ins. Co.*, *supra*; S. C., 28 N. Y., 153; *Bunten* v. *Orient Ins. Co.*, *supra*; Dunlap's Paley on Agency, 189.) McCoy's possession of the policies was an indication on which plaintiff had a right to rely that he was a general agent. (*Devendorf* v. *Beardsly*, 23 Barb., 656; *Lightbody* v. *N. Am. Ins. Co.*, 23 Wend., 22; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351, 361, 372; *Wood* v. *Poughkeepsie Ins. Co.*, 32 N. Y., 619; *Sheldon* v. *Atlantic Ins. Co.*, 26 id., 46; *Perkins* v. *Washington Ins. Co.*, 4 Cowen, 645; *Lightbody*

v. *N. Am. Ins. Co.*, *supra*; *Post* v. *Ætna Ins. Co.*, id., *Devendorf* v. *Beardsley*, id.; *Boehen* v. *Ins. Co.*, 35 N. Y., 131; *Woodbury* v. *Charter Oak Ins. Co.*, 31 Conn., 517.) The contract of insurance was ratified by the defendant. (*Whitaker* v. *Farmers' Union Ins. Co.*, 29 Barb., 312; *Peele* v. *Ins. Co.*, 3 Mason, 22.) The preliminary proofs were sufficient. (4 Bosw., 1; 43 Barb., 351; 31 How. Pr., 508; 1 Abb. [N. S.], 349.) The loss and the amount of damage were sufficiently proved, and the verdict was less than the evidence would have warranted. (*Wicklow* v. *Lane*, 37 Barb., 244; *Dowd* v. *Rush*, 28 id., 157; *Grazer* v. *Stillwagen*, 25 N. Y., 316; *Winchell* v. *Hicks*, 18 id., 558, 565; *Taylor* v. *Atlantic Mut. Ins. Co.*, 37 id., 275, 283.)

Grover, J.    Whatever doubts may formerly have been entertained as to the validity of parol contracts of insurance, made by insurance corporations, authorized by their charters to make insurance by issuing policies, it is now settled that they are valid. (*Commercial Marine Insurance Company* v. *The Union Insurance Company*, 19 How., U. S., 321; *Trustees, etc.*, v. *Brooklyn Fire Insurance Company*, 19 N. Y., 305.) It is equally well settled that parol contracts of such companies, to effect an insurance by issuing policies, are valid, and will be enforced by compelling specific performance by the company, or in an action for the breach of the agreement; in either of which a recovery for a loss of the property agreed to be insured will be awarded to the plaintiff. The inquiry in this case is whether an agreement to issue a fire policy upon the cotton, for the loss of which this action was brought, was made by the defendant. It was proved that C. F. McCoy, a resident of Augusta, Georgia, in 1865 was engaged in the insurance business as agent for several insurance companies, incorporated by different States; that in November of that year the defendant appointed him its agent, giving him a power of attorney, the material part of which in this case was as follows: " Be it known that C. F. McCoy, of Augusta, State of Georgia, is hereby duly appointed

and constituted an agent of the Albany City Fire Insurance Company, at Augusta, during the pleasure of said company. As agent, he is authorized and empowered to receive proposals for insurance against loss or damage by fire, and to make insurance by policies of the said Albany City Fire Insurance Company, to be countersigned by the said C. F. McCoy, and to renew the same, to assent to assignments and transfers." That at the same time the defendant delivered to McCoy a quantity of blank policies of insurance, signed by its president and secretary. The question in this case is whether this authorized McCoy to make a contract binding upon the defendant for the issue of a policy of insurance. In determining this question the prevailing usage in transacting such business must be regarded; as it is an elementary principle that the delegation of an authority to transact any business includes an authority to transact it in the usual way, and to do the acts usual in its accomplishment. It must also be kept in mind that he was clothed with full authority to make all necessary surveys to determine the risk, its duration and the rate of premium, without any reference to a consultation with the company or any of its officers; in short, to negotiate and conclude all the terms of the contract, and to consummate it by filling up and countersigning the policy. This necessarily includes power to make a preliminary contract for the issuing of a policy; as it is manifest that no policy could ever be issued in the absence of such a contract. The question is whether this preliminary contract is binding upon the company. In other words, whether, when made, and the premium therefor paid by the assured, the company is bound, before the policy is actually filled up, countersigned and delivered. It is clear that if binding upon the company at all for the shortest period of time, it will so continue until, by some act of the assured or in some other way, it is discharged therefrom; mere lapse of time, short of the running of the statute of limitations, will not have this effect. The usage of making agreements for insurance and paying the premiums, providing for the issuing of policies thereafter, to

be dated at and in force from the time of making the agreement, is so general that judicial notice must be taken of it. It would, upon principle, follow that an unrestricted authority to negotiate a contract of insurance by issuing a policy, included authority to make a valid preliminary contract for such issue. In *Post* v. *Ætna Insurance Company* (43 Barb., 361) it was shown that the agent was intrusted with blank policies and certificates of renewal, executed by the officers of the company, which provided that they should not be operative until countersigned by the agent. The agent was shown to have transacted business for some time for the defendant. It was held that the possession and use of these papers by the agent showed that he was authorized to make a preliminary agreement for the renewal of a policy by issuing a certificate, although a parol agreement, renewing the same, would be unauthorized. This is a direct authority for the power of the agent in the present case to make a like agreement for the issuing of a policy. The possession of blank policies and certificates of renewal by an agent, providing that they shall be effective only when countersigned by such agent, imports nothing more than what is expressed in the power of attorney in the present case; that is, an authority to bind the company by filling up, countersigning and delivering the policy or certificate; and so it was regarded by the court, as the validity of the contract was placed upon the ground that it was necessary that such agreement should precede the issuing of the paper, and that the company was responsible for the failure of the agent to perform what he had undertaken to do by such agreement. In *Sanborn* v. *Fireman's Insurance Company* (16 Gray, 448) this question was considered. The court remarked: " The objection that the agent had only power to issue policies, and not otherwise to make contracts binding on the defendant, comes within the same rule of construction. His power of attorney authorized him to effect insurance, and, for this purpose, to survey risks, fix the rate of premium and issue policies of insurance, signed by the president, etc. We are of opinion that this gave him authority to make the

preliminary contract as well as to issue the policy. He was
not a special agent employed merely to receive and transmit
proposals to his principal, but had power to do whatever the
company could do in effecting insurance; and it appeared by
the evidence of the defendant that he was furnished with
policies signed in blank, to be filled up and issued at his dis-
cretion. It will be seen that the court declared the authority
to make the preliminary contract from the full power given
to negotiate the contract, and fill up and issue the policy in
his discretion, and not from a construction giving the agent
power to bind the company by parol contracts of insurance.
In this view, the case sustains the position contended for by
the plaintiff in the present case. It is not claimed that McCoy
could bind the defendant by a parol contract of insurance.
That is not the question; but it is whether, having agreed
upon the terms of an insurance and to issue a policy therefor,
the company is liable for his failure to perform such contract.
My conclusion is that it is. It may be said that this construc-
tion would enable McCoy to perpetrate a fraud upon the
company by making preliminary contracts when its design
was only to become bound by writing. This, to a certain
extent, may be true; but it furnishes no reason for depriving
third persons of the benefit of contracts entered into with
him as its agent, who relied thereon for indemnity from a
loss from the peril embraced in the contract, by a construction
of the papers more strict and rigid than is fairly required by
their import. It is an elementary rule that the principal
must bear a loss sustained by the misconduct of his agent,
acting within the scope of his authority, rather than a third
person who has fairly dealt with him as such. Assuming
that McCoy was authorized to bind the defendant by a con-
tract to issue a policy, the defendant insists that no such con-
tract was in fact made. The undisputed evidence showed
that, in the fall of 1865, McCoy was the agent of several
insurance companies; that the plaintiff had about 112 bales
of cotton at Howard's landing, upon the Chattahooche river;
that he applied to McCoy for insurance upon this cotton

while there, and for further insurance while on its transit from that place to Appalachicola, and, also, for insurance upon the same after its arrival at the latter place until placed on shipboard for Liverpool; that the amount to be insured was agreed upon, and the premium determined by McCoy, who agreed to insure the same as requested; that the plaintiff left it to McCoy to determine in what companies he would place the insurance, and the amount in each respectively; that McCoy, among other companies, determined to place $6,100 of the amount to be insured in the defendant's company, and entered the contract to that effect in the register kept by him, received the premium thereon, and credited the amount to the defendant; and, before any loss accrued, reported the risk taken, and paid the premium to the defendant. This was a contract by McCoy to insure the above amount in the defendant's company; and as he could only effect this by issuing a policy, a contract (as was held in *Post v. The Ætna Company, supra*) to issue such policy. This contract being valid against the defendant, it follows that all exceptions taken to rulings of the judge, as to the competency of evidence given for the purpose of showing a subsequent ratification, are unavailable.

The remaining question arises upon the exception taken to the direction of the judge as to the amount of the verdict directed for the plaintiff. This was that contained in the proofs of loss. This was not competent evidence against the defendant upon that point; nor was the report of the loss made to the company by McCoy competent as to this against either party. But the evidence showed the number of bales (112), the weight of each bale; the lowest price per pound fixed by any witness speaking upon that subject was thirty-seven cents. The witness Preston gives the only testimony showing the extent of the loss. He says that some four or five hundred bales were damaged or consumed by the fire; that the plaintiff was the consignor of 112 bales, giving marks; that he did not know the relative quantities damaged or consumed; that the

112 bales of the plaintiff were damaged or consumed. Other evidence was given showing the value of the damaged cotton, which, deducted from the value of the 112 bales, and apportioning the loss between the insurers according to their respective amounts, would have entitled the plaintiff to recover against the defendant a sum larger than that stated in the proofs of loss. The defendant was not, therefore, injured by the judge's adopting that sum, as there was no evidence that would have justified a verdict for a less amount.

The judgment appealed from must be affirmed, with costs.

CHURCH, Ch. J., PECKHAM and FOLGER, JJ., concur.

RAPALLO, ALLEN and ANDREWS, JJ., dissent.

Judgment affirmed.