GEORGE B. MORE AND CHARLES J. PIERCE, RESPOND-ENTS, *v.* NEW YORK BOWERY FIRE INSURANCE COMPANY, APPELLANT.

*Insurance — delay on the part of an insurance agent to notify a party, holding a contingent contract of insurance, of the refusal of the company to accept the risk — provision requiring an agent to have written authority.*

In an action brought to recover upon a contract to procure a policy of insurance which would insure the plaintiffs for the term of six months from loss or damage by fire to their creamery, situate on Main street in North Harpersfield, it appeared that the negotiations were had by the plaintiffs with one Nichols, who had possession of certain blanks issued by the defendant, an insurance company; that on May 12, 1889, Nichols made a memorandum of the insurance desired by the plaintiffs, told them that he would take their application, and that if it was accepted by the company, the policy would be dated from that day, but that if it was not accepted they would know in a few days; that he would send it on to Mr. Sage, the agent of the company, to see whether it would be accepted or not.

On the same day the application was forwarded by Nichols to Sage, who was an agent of the defendant, and on May 16, 1887, Sage forwarded the communication to the defendant, at the same time advising Nichols of its receipt by him. On the 18th day of May, 1887, the assistant secretary of the defendant wrote to Mr. Sage that the company declined the risk. The letter was received by Sage in due course, but he omitted to notify Nichols of the fact that the defendant had declined to take the risk until after the property had been destroyed by a fire which occurred on June 6, 1887, upon which day Nichols telephoned to Sage that the creamery had burned, and Sage telegraphed to Nichols that the application was not accepted by the defendant. The premium for the insurance was paid, in accordance with the negotiations had with Nichols, on the 30th day of May, 1887.

*Held,* that the silence and the acquiescence in the application, so far as the plaintiffs had any knowledge thereof, were, in effect, an approval of the application and a consent on the part of the defendant to enter into the contract of insurance which was contemplated by the parties to the negotiations.

That, by reason of the omission on the part of Sage to notify the plaintiffs of the rejection of the application, they were authorized to assume that their contract for a policy of the defendant was valid and binding.

That the authority conferred upon Sage, as the agent of the defendant, was such that he might call to his aid others in the execution of the details of the business which he undertook for the defendant.

That the defendant was bound by Sage's neglect for a period of eighteen days to cancel or revoke the agreement which had been made with the plaintiffs; that as it had clothed Sage with power and apparent authority to make the contract, which he had sanctioned and allowed the plaintiffs to repose upon until the fire occurred, the defendant was liable therefor to the plaintiffs.

That the condition of the policy that, "in any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company," did not relieve defendant from the liability imposed upon it by the negligence of its agent in the discharge of his duty.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the county of Delaware on the 1st day of April, 1889, upon the report of a referee.

The action was brought to recover upon an alleged contract of insurance made by the defendant, through its agent, with the plaintiffs.

The complaint alleged, among other things : " That on or about the 12th day of May, 1887, at North Harpersfield, Delaware county, N. Y., in consideration of the payment by the plaintiff to the defendant of the premium of thirteen dollars and fifty cents ($13.50) the defendant, by its agent, duly authorized thereto, made and entered into a contract with the plaintiffs to insure them against loss or damage by fire, from the said 12th day of May, 1887, to the 12th day of November, 1887, to the amount of one thousand and eight hundred dollars ($1,800), upon the creamery building and contents therein contained, consisting of creamery fixtures and other articles of property, at North Harpersfield, Delaware county, N. Y., and to issue and deliver to the plaintiffs their policy of insurance in writing, duly executed by the proper officer or officers of said company."

The action was brought to recover upon " a contract to procure a policy of insurance, which would insure the plaintiffs for the term of six months from loss or damage by fire to their creamery situated on Main street, in North Harpersfield." Plaintiffs negotiated in May, 1887, with one Nichols, for an insurance upon the creamery building in the sum of $800, and $800 on fixtures therein, and $200 on butter packages, milk cans and butter therein contained. The rate was three-quarters per cent, or thirteen dollars and fifty cents for the period of six months. On the 6th of June, 1887, the property was totally destroyed by fire, and the damages caused by such fire exceeded $1,800, the amount of insurance mentioned in negotiations which the plaintiffs had with Nichols, who had possession of certain blanks issued by the defendant. Prior to the 12th day of May, 1887, the plaintiffs had had some negotiations with Nichols, and on that day the plaintiffs informed Nichols that they desired to insure their

property to the extent of $1,800. He made a memorandum of the insurance desired by them, told them that he would take their application, and that if it was accepted by the company the policy would be dated from that day, but that if it was not accepted they would know in a few days, and that he would send it on to Mr. Sage to see whether it would be accepted or not. After the interview with the plaintiffs on the 12th day of May, 1887, and on the same day, Nichols made out an application to the defendant for $1,800, and forwarded it to Mr. Sage, at Catskill, unsigned, accompanied by a letter informing Sage that the plaintiffs wanted the insurance. Sage held a commission as agent for the defendant and resided ·at Catskill when he received the application in question with a letter from Nichols, on the 16th day of May, 1887; and on that day, he communicated to the defendant at New York that he had received the application for an insurance of $1,800 on the creamery, and on the same day Sage wrote to Nichols to the effect that he had received the application for an insurance on the creamery, and that he would advise him as soon as he heard from the defendant. On or about the 18th day of May, 1887, Mr. Patterson, the assistant secretary of the defendant, wrote to Mr. Sage that the company declined the risk upon the creamery. That letter was received by Sage in due course of mail, but he omitted to notify Nichols of the fact that defendant had declined to take the risk until after the fire, which occurred on June 6th, 1887. Upon that day Nichols telephoned to Sage that the creamery had burned, and Sage telegraphed to Nichols that the application of Moore & Co. was not accepted by the defendant. The premium for the insurance was paid in accordance with the negotiations had with Nichols, by the plaintiffs to him on the 30th day of May, 1887, by their check, which he received as cash payment for the premium. Nichols had no written appointment from the defendant. He used, however, blanks which were furnished by the company in filling out applications for insurance.

The referee found as conclusions of law, viz.:

" 1. The writing of Nichols on the 12th day of May, 1887, together with the acts of the defendant and the agent Sage, and by reason of the writing not being repudiated within a reasonable time after it was submitted to the defendant, became and was a valid and subsisting contract of insurance at the time of the fire, accord-

ing to the terms of the writing and in the form of the standard stock policy of the State of New York, and was, as such, binding on the defendant.

"2 The defendant's failure to pay the loss before the commencement of this action was a breach of the contract which entitled the plaintiffs to recover their damages."

Exceptions were filed to the referee's report, and several exceptions were taken during the progress of the trial.

*Hallock, Jennings & Chase* and *A. H. Sawyer*, for the appellant.

*Grant & Wyckoff*, for the respondents.

HARDIN, P. J.:

On the 16th of May, 1887, Sage held a commission from the defendant which authorized him to act as its agent in conducting the business of fire insurance. The language of the commission is very similar to the language used in the commission of McCoy, quoted in the opinion of the court, as found in *Ellis* v. *Albany City Fire Insurance Company* (50 N. Y., 406), as in that case the defendant had delivered a quantity of blank policies of insurance and other papers relating to the business, and the question was whether McCoy was authorized to make a contract binding upon his principal for the issuing of a policy of insurance ; and in discussing that question, GROVER, J., said : "In determining this question the prevailing usage in transacting such business must be regarded, as it is an elementary principle that the delegation of an authority to transact any business includes an authority to transact it in the usual way, and to do the acts usual in its accomplishment. It must also be kept in mind that he was clothed with full authority to make all necessary surveys to determine the risk, its duration and the rate of premium, without any reference to a consultation with the company or any of its officers ; in short, to negotiate and conclude all the terms of the contract, and to consummate it by filling up and countersigning the policy. This necessarily includes power to make a preliminary contract for the issuing of a policy, as it is manifest that no policy could ever be issued in the absence of such a contract. The question is whether this preliminary contract is binding upon the company. In other words, whether, when made, and the premium therefor

paid by the assured, the company is bound, before the policy is actually filled up, countersigned and delivered. It is clear that, if binding upon the company at all for the shortest period of time, it will so continue until, by some act of the assured or in some other way, it is discharged therefrom; mere lapse of time, short of the running of the statute of limitations, will not have this effect. The usage of making agreements for insurance and paying the premiums, providing for the issuing of policies thereafter, to be dated at and in force from the time of making the agreement, is so general that judicial notice must be taken of it. It would, upon principle, follow that an unrestricted authority to negotiate a contract of insurance by issuing a policy, included authority to make a valid preliminary contract for such issue."

When *Angell* v. *Hartford Fire Insurance Company* (59 N. Y., 173) was tried before me at the Jefferson Circuit, I followed the principle laid down in the case from which the above quotation has been made, and the determination made at that circuit, as well as the case of *Ellis* v. *Albany Fire Insurance Company* (*supra*), were approved by the Court of Appeals in deciding the case of *Angell* v. *Hartford Fire Insurance Company* (59 N. Y., 173).

From the evidence found in the appeal book it is very apparent that Sage knew on the 16th of May, 1887, that the plaintiffs had made application for insurance in the sum of $1,800, and that they had agreed upon the terms, and that the insurance was to take effect from the 12th day of May, 1887. If he had then issued a policy to them he would have done so in pursuance of his authority as the agent of the defendant. On the sixteenth he knew that the plaintiffs relied upon the defendant as an insurer of their property. Doubtless, when he received the application, he should have rejected the same, but his silence and acquiescence in the application, so far as the plaintiffs had any knowledge thereof, was, in effect, an approval of the application, and a consent on the part of the defendant to enter into the contract of insurance which was contemplated by the parties to the negotiations, and evidenced in part by the application furnished to Sage. He allowed the plaintiffs to repose upon the faith that they had effected valid insurance with the defendant until after the fire occurred. If he had been more diligent in the discharge of his duty to the defendant as well as to the plaintiffs, as soon as he

learned that the defendant desired to reject the application for the insurance of the plaintiffs' property, he would have communicated that fact to the plaintiffs. This he wholly omitted to do. By reason of his omission the plaintiffs were authorized to assume that their contract for a policy of the defendant was valid and binding. The cases to which we have already referred clearly sustain the position that it was within the scope of the agency of Sage to make the contract claimed by the plaintiffs; he had not only an apparent authority, but an actual authority to make such contract. It is a familiar rule that, " where confidence has been reposed in an agent, and an apparent authority conferred upon him, that the principal must suffer from an actual exercise of authority not exceeding the appearance of that which is granted. When one of two innocent persons must suffer in such a case, that person must bear the loss who reposed the confidence." (See opinion of DWIGHT, C., in *Armour* v. *Mich. Cent. R. R. Co.*, 65 N. Y., 121.)

We see nothing in the commission of Sage which he received from the defendant, or in the authority which he received from it, or the authority inferable from his course of business with the defendant, or the nature of the business in which he was engaged, which would warrant us in saying that only such acts as he personally supervised in the accomplishment of the business of the defendant could be binding upon the defendant. Upon the other hand, we think the inference reasonable that the authority which he derived from the defendant was such that he might call to his aid others in the execution of the details of the business which he undertook for the defendant. He resided at Catskill, and was engaged for the Co-operative Insurance Company, in a line of business which required his personal presence most of the time in Catskill. He was carrying on business for the defendant in three large and extensive counties, some of the territory embraced within the limits prescribed for him by the defendant was 150 miles distant by rail from his home office, therefore, the circumstances surrounding his relation to the defendant, and to its business, in which he was to act as their agent, justify the inference that the defendant understood during the existence of such agency that he would call to his aid the services of clerks or solicitors. We think the language used by the court in

*Bodine* v. *Exchange Fire Insurance Company* (51 N. Y., 122), is quite applicable to this aspect of the case we have been considering. The court said: "We must infer that John Whelp had all the power of ordinary insurance agents. He had acted for this company for nine or ten years in procuring risks for it, and in delivering policies and renewal certificates. His name was indorsed upon the original policy as the company's agent. It was, therefore, according to the decisions above cited, just as competent for him to waive the condition of prepayment as for any other officer or agent of the company. But conceding this, it is claimed, on the part of the appellant, that his son, Charles Whelp, had no authority to waive the prepayment of the premium so as to bind the company. Charles had been the clerk and assistant of his father for three or four years. He had procured policies and renewal certificates from the company and frequently delivered them to the persons insured, waiving prepayment of the premiums. All this he did with the knowledge and assent of his father, and hence we must infer that he was authorized by his father to do it. The agency of John Whelp was not such as to require his personal attention to all the details of the business intrusted to him. We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them; and that they could not transact their business if obliged to attend to all the details in person, and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums and to take payment of premiums in cash or securities, and to give credit for premiums or to demand cash, and the act of the clerk in all such cases is the act of the agent, and binds the company just as effectually as if it were done by the agent in person."

The same view of an agent's authority and the powers of a subordinate assistant were stated by me in delivering the opinion of the court in *Kuney* v. *The Amazon Insurance Company* when it was before this court on the first appeal, and the same doctrine was repeated when the case was before this court on a second appeal, as appears by a report thereof in 36 Hun, 66.

Sage neglected for a period of eighteen days to cancel or revoke the agreement which had been made with the plaintiffs, and during

that whole time allowed them to rely upon the arrangement for insurance which had been communicated to him as early as the 16th of May, 1887. We think it reasonable to hold that the defendant is bound by his acts, and that as one of two parties must suffer by his omission, it should be the defendant rather than the plaintiffs, as it had clothed him with power and apparent authority to make the contract which he had sanctioned and allowed the plaintiffs to repose upon until after the loss occurred.

Although our attention has been called to chapter 488 of the Laws of 1886, providing for a standard fire insurance policy, and to the clause in such a policy, viz. : "In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company," we think, under the circumstances of this case, no such force or effect can be given to the language just quoted as would relieve the defendant from the liability which its agent, Sage, cast upon it by his negligence in discharging his duty.

The views which we have already expressed render it unimportant to consider the exceptions taken upon the trial to the admission of some evidence which was, perhaps, immaterial, as in the view we have considered the case it was unimportant.

We think the conclusion reached by the referee should be sustained and the judgment be affirmed, with costs.

MARTIN, J., concurred ; MERWIN, J., not voting.