(Superior Court of Cincinnati—*General Term.*)

THE CONNECTICUT FIRE INSURANCE COMPANY *v.* GEORGE H. BENNETT & BROS.

*Power of a general agent to bind a fire insurance company by preliminary contract.*

A general agent of a fire insurance company may bind the company by preliminary contract for insurance. Where the agent represents a number of companies, he must, in some way, designate the company for which he contracts, in order to bind it, but notice to the company of such designation is not necessary.

(Decided October, 1894.)

SAYLER, J.

The firm of John H. Crain, Son & Co. were insurance agents, representing a number of fire insurance companies at Lawrenceburg, Kentucky.

On September 27, 1890, James Levy & Bros. wrote a letter to said firm, as follows:

" *Gentlemen:* Insure one year, George H. Bennett & Bros., Pitttsburg, $4,200, on whisky in Susquehanna ' A,' U. S., No. 63; issue two policies;" and mailed said letter properly addressed to said firm, and with postage prepaid, at Cincinnati, at 4:30 p. m. o'clock of said day.

On September 8th the whisky was destroyed by fire, of which fact said insurance agents were informed by telegram from Levy & Bros., the telegram reaching them on the morning of the next day.

Said insurance agents received the letter from Levy & Bro. ordering the insurance in the afternoon of October 29, and thereupon issued three policies of insurance to George H. Bennett & Bros.; one in the Connecticut Fire Insurance Company for $1,500; one in the Western Assurance Company for $1,300; one in the Merchants' Insurance Company for $1,400, dating said policies as of September 27, and sent them to James Levy & Bro. by letter of September 29, giving credits for the premiums. Levy & Bro. thereupon remitted to said agents the amount of the premiums on said policies, and which amount was received by the agents, and by them, in the due course of business, paid over to the respective companies.

Proof of loss was duly made by the defendant in error under the policy of the plaintiff in error, but the plaintiff in error rejected the claim, and duly tendered to the defendant in error the premium so received.

The defendant in error declined to receive the premium so tendered back, and brought the action in the court below on the policy of insurance for the amount of the insurance money.

It is claimed on behalf of Bennett & Bro. that at the time Levy & Bro. wrote said letter, an agreement existed between said Levy & Bro. and said insurance agents, whereby policies were to be issued by said agents on orders given by Levy & Bro., for themselves or for their customers, insuring from the time the letter ordering the insurance was post-marked; that under such agreement the insurance in this case was made to run from September 27, the date of the postmark on the letter; that the insurance agents under their custom of doing business, had, prior to said time, to-wit, about the twentieth of the month, designated said three companies as the companies in which insurance, taken during the remainder of that month, should be placed, and in consequence of such designation, they placed the insurance in such companies; that the premium was to be the rate theretofore fixed by an agreement between the agents and Levy & Bro., and that under the course of business credit for the premium was to be given.

The plaintiff in error claims that there was no such agreement existing between Levy & Bro. and John H. Crain, Son & Co., at the time of this insurance.

It appears that an agreement was made in the year 1880 or 1881, between Levy & Bro. and John Crain, then of the firm of Crain & Son, to the effect that all insurance ordered by Levy & Bro. for themselves or for their customers should take effect and be in force from the time the letters ordering such insurance should be mailed and postmarked at Cincinnati; that in January, 1888, the agency was changed to Crain & Posey; in September, 1888, it was changed to John A. Posey; and in March, 1890, it was transferred to John H. Crain, Son & Co. The evidence is to the effect that in all the insurance taken by Levy & Bro., from that agency to the time of this insurance, and amounting to millions of dollars, the policies were issued as of the date shown by the post-mark of the respective letters ordering insurance. It seems to be clear that each successive agent or agency acted upon the original agreement made in 1880 or 1881, and issued policies in compliance therewith, and it is further clear that Levy & Bro. on the one part, and John Crain, Son & Co. on the other part, believed the agreement to be in existence, and acted upon it when this insurance was made. In 123 Mass. 329, the court say: "There is evidence that he (the insured) considered himself, and was understood by the local agents to be so insured; that the amount and rate of premium were agreed upon, and that there was a usage among insurance companies and their agents to bind the company by preliminary oral agreements until policies could conveniently be issued." We think the course of business of the agents with Levy & Bro. under the agreement so originally made would bind them in this specific act. "Under such circumstances the plaintiff (below) might have the right to rely upon the oral agreement, and for that reasom might have failed to seek insurance elsewhere." · 123 Mass. 329.

It is claimed, however, that such agreement, even if it existed, would not bind the Connecticut Insurance Company, there being no evidence that the company had notice thereof.

It appears that the firm of Crain & Son were appointed agents by the company in 1886; the appointment was by a commission whereby they were "duly constituted agents of the Connecticut Fire Insurance Company of Hartford, Connecticut, with full power to receive proposals for insurance against loss or damage by fire in Lawrenceburg, Kentucky, and vicinity; to fix rates of premiums, to receive moneys, aud to countersign, issue, renew and consent to the transfer of policies of insurance, signed by the president

and secretary of said Connecticut Fire Insurance Company, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers."

Blank policies of insurance, duly signed by the president and secretary, were furnished to the agents to enable them, without conference with the company, to countersign and issue the policies on behalf of the company.

We think the powers given to the agents as above stated were as full as the powers given to the agent in the case of *Krumm* v. *Insurance Company*, 40 Ohio St. 225, and in that case the court say: "In the business of issuing policies of insurance against loss by fire, this company delegated to Towson all the powers possessed by it, to be exercised in Lancaster and its vicinity." *Ib.* 229.

In *Machine Company* v. *Insurance Company*, 50 Ohio St. 549, the powers given to the agent were not greater than in the case at bar, and the court reviewing the authorities say, *Ib.*, 558: "It is well settled that such an agent is the general agent of the company, and may, in his dealings with those he insures, waive payment in cash of the premiums, and, indeed, any of the conditions of the policy, except when a restriction upon his authority is in some way brought to the knowledge of the insured."

Such agent may agree to terms modifying the general provisions of the policy, and even inconsistent therewith; 65 N. Y. 21.

In 50 N. Y. 402, the court say that "an unrestricted authority to negotiate a contract of insurance by isuing a policy, included authority to make a valid preliminary contract for such issue." *Ib.* 407. See, also, 114 N. Y. 422; 142 N. Y. 389.

We take it, therefore, that in the business of insuring against loss by fire, the plaintiff in error had delegated to John H. Crain, Son & Co. all the powers possessed by it to be exercised in Lawrenceburg and vicinity. It is now well settled that a policy is only evidence of the contract, and the latter may be shown by parol when the policy has not been written. 50 Ohio St. 555; 123 Mass. 329. It was competent, therefore, for the insurance company to agree with Levy & Bro. that all insurance ordered by them should take effect and be in force from the date of the post-mark of the letter ordering the same, and it was therefore competent for John H. Crain, Son & Co. to enter into such an agreement. They had power to do whatever the company could do in effecting insurance. 50 N. Y. 408.

It is claimed, however, that at the time the letter was written, Crain, Son & Co. were acting as agents of a number of companies, and not only for the three companies in which policies were issued, and that no designation was made by the agents as to the companies which should carry the risk until after the fire.

It is held in 65 Wis. 438, "that the contract of an agent representing several companies could not bind any one company until the agent should, in some manner, designate a company as the party for whom he contracted." This is sustained in 20 Fla. 818.

But it appears that the agents in the case at bar had, prior to the date of the letter, designated in a manner long theretofore customary in their office these companies as the companies which should carry insurance taken during the remainder of the month. It was the custom of the agency to examine the books after the middle of each month to see which of the companies had not been allotted their full share of insurance for the month, and such companies were then designated to receive the insurance to be placed during the remainder of the month.

The three companies above named were designated in this manner, on or about the twentieth of the month, as the companies in which insurance should be placed during the remainder of the month. The names of these

companies were hung up in the office of the agency, and the clerks were instructed that these companies were to have all the insurance that came in for the balanc of the month until they got their proportion of the business. This designation was fair, and was based upon a principle of an equitable distribution of insurance taken by the agency among the companies represented by it. No notice of this designation, nor of the manner of the designation, was given to ths company. But that was not necessary. It is clear the court would have held the designation in 65 Wis., *supra*, binding, had it been made according to the contract, although the company had no notice.

It was claimed further that no contract could grow out of the letter, because its term are not specific, It seems to us that the subject-matter of the risk, to-wit, whisky located in United States warehouse, No. 63; the risk insured against, to-wit, fire; the amount of indemnity, to-wit, $4,200, to be divided; the duration of the risk, to-wit, one year, are definite. The companies among which the insurance was to be divided and the premium to be paid were not stated in the letter.

But the terms of the agreement and the assent of the parties to them may be shown by their acts and the attending circumstances as well as the words they have employed: 50 Ohio St. 555. The testimony is to the effect that the division of the insurance and the companies in which the insurance was to be placed, was, in the course of business of this agency with Levy & Bro., left to the discretion of the agency.

The letter designated two policies, but the testimony tends to show that this meant not less than two policies, and that all the parties so understood it. The premium to be paid was an agreed rate of eighty-five cents per $100, under an agreement made prior thereto. Where nothing is said "in the negotiation for insurance about special rates or conditions, it may be presumed that those which were usual and customary were intended." 50 Ohio St. 549, 556.

We think, under this late decision of the Supreme Court, the letter considered in connection with the attending circumstances, was sufficiently definite to establish a contract of insurance if accepted and acted upon.

It is further claimed that the line of insurance of the plaintiff in error on this warehouse was already filled up through another agency, and that therefore this policy should not have been issued. A similar claim was made in 40 Ohio St. 225, 230, but the court held against it.

It seems to us clear that this policy was issued by the agent, having authority to act, under an agreement and in compliance with a custom which had existed between the agency and Levy & Bro. for many years; that the contract for insurance was fair; that the insured relied upon such insurance, and having done all that was required on their part to be done under the circumstances for the purpose of obtaining the insurance, had the right to rely upon the same.

In 20 Ohio, 529, it was stated on the application, that a policy would issue on the application dated, etc., "if approved" by the company. Yet the court say that they did not think such qualification reserves to the company the arbitrary right of setting aside, at pleasure, any contract with the agent, no matter how fair it may be, etc. "Such a construction would permit them to trifle with the community to a most glaring extent." *Ib.*538

It is the opinion of the court that the judgment of the court below should be affirmed.

*Thomas A. Logan*, for plaintiff in error.

*Wilby & Wald, contra.*