EDWARD R. C. CLARKSON and Others, Plaintiffs, v. THE WESTERN
ASSURANCE COMPANY, Defendant.

*Insurance — parol contract to insure a vessel — conditions in a policy, not delivered,
of no effect — verdict directed subject to the opinion of the court at General
Term is improper where any fact is controverted or any exception is taken.*

A recovery can be had upon a parol contract to insure, although no policy was
ever issued by the insurer, if the jury finds with the insured upon a complaint,
alleging that the insured applied for insurance; that the insurer accepted the
risk, and that the premium was tendered.

Where the insurer refuses to deliver a policy of insurance, and resists payment
upon the ground that it entered into no obligation to insure, it cannot set up, as
a defense to an action brought upon a parol contract of insurance, limitations
and conditions which it would have inserted in a policy of insurance had one
been delivered by it to the insured.

Where a verdict is ordered, subject to the opinion of the court at General Term
without qualification, no exceptions can be heard by the General Term, and
the only question is which party is entitled to judgment upon the uncontro-
verted facts.

Hence, where exceptions have been taken upon the trial, or the facts are contro-
verted, the case is not one in which a verdict can properly be directed subject
to the opinion of the court at General Term.

Where the trial court, in making a decision, expressly states that its statement of
the facts shall not bind either party, directs a verdict for the defendant subject
to the opinion of the court at General Term, and the plaintiff excepts to such
direction, the exception of the plaintiff to the direction of a verdict for the
defendant brings up for review the question of the plaintiff's right to go to
the jury upon the issues in the case. If the court finds that there was a ques-
tion of fact in the case a new trial must be ordered.

IN this action the jury rendered a verdict in favor of the defend-
ant, after a trial at the Erie Circuit on June 10, 1895, which, by
direction of the court, was rendered subject to the opinion of the
court at General Term.

*Benjamin H. Williams,* for the plaintiffs.

*George Clinton,* for the defendant.

WARD, J. :

The complaint in this action alleged in substance that, on the 9th
day of December, 1892, Melville F. Brown and Charles H. Blakeslee

were the owners of the steamer *Northerner*, and that Thomas Maytham, Edward C. Maytham, Lambert W. Drake and John Kelderhouse were mortgagees holding a mortgage thereon, and that on said last-named day the said mortgagors, Brown and Blakeslee, applied to the defendant for insurance to the amount of $6,000 on said steamer against loss by fire for the term of four months from that date, loss, if any, payable to said mortgagees; that the defendant accepted the application, and that on the 12th day of December, 1892, before any policy was delivered, the steamer burned and was totally destroyed at L'Anse, Michigan; that afterwards the defendant was tendered the premium but refused to deliver the policy or pay the amount insured.

The answer, among other things, denied the allegations in the complaint and alleged that in the application for insurance it was represented and warranted that the said steamer lay at L'Anse, Michigan, and that she was properly moored and laid up for the winter, which was not true; that the steamer had on board petroleum; that the risk was extra hazardous, which was unknown to the defendant. It further alleged that the policy which would have been issued by the defendant would have contained, among other provisions, a clause to the effect that no suit or action on such policy for the recovery of any claim should be sustainable until after a full compliance by the insured with the requirements set forth in the policy, nor unless commenced within twelve months after the fire.

The relief demanded in the complaint was that the defendant deliver to the plaintiffs a policy of insurance in accordance with the agreement to insure, and that the plaintiffs have judgment for the sum of $6,000 and interest thereon from the 1st day of March, 1893. The action was not commenced until after the expiration of twelve months from the time of the fire. The policy was never delivered nor was it produced upon the trial. No premium was in fact paid, but by the custom of the defendant such premiums were to be paid upon the presentation of a bill for the premium, and thus credit was given to some extent, and no point is made here because such premium was not paid previous to the fire. The plaintiffs were the owners of the cause of action at the time of the commencement of the action. At the conclusion of the plaintiffs' evidence the defendant moved for a nonsuit. The plaintiff asked

to go to the jury upon the questions in the case, and the trial judge stated that there were two exceptions in the case that had been taken by the plaintiffs to the admission of certain evidence, and that if they were out of the way he would make a disposition of the case by sending it to the General Term subject to its opinion. These exceptions were waived by the plaintiffs' attorney and the learned trial judge proceeded to make a statement of the facts in the case with a view of apprising the General Term of the view the trial court had taken of the evidence, but expressly stating that the statement did not bind any one as to the facts, and then directed a verdict for the defendant subject to the opinion of the court at General Term, to which the plaintiffs excepted. The case is here, therefore, on this order of the trial court burdened with the exception last referred to, and the first question that presents itself is as to what disposition shall be made of the case. and upon what principle it shall be considered by the General Term.

In *Durant* v. *Abendroth* (69 N. Y. 148, 151) RAPALLO, J., speaking for the Court of Appeals, said : " This is not strictly the case of a verdict subject to the opinion of the court, for at the time of directing the verdict for the plaintiff the court ordered the exceptions to be heard in the first instance at General Term. Where a verdict is ordered subject to the opinion of the court without qualification, exceptions cannot be heard, and the only question before the General Term is which party is entitled to final judgment on the uncontroverted facts, and for that reason it is improper to direct a verdict subject to the opinion of the court, where exceptions have been taken on the trial *or the facts are controverted.*"

In *Matson* v. *The Farm Buildings Insurance Co.* (73 N. Y. 310), which was an action brought upon a policy of fire insurance, which contained the provision, in substance, that the defendant should not be liable for a loss occasioned by the use of kerosene oil, on the trial the defendant's counsel asked for a nonsuit on the ground that the condition above mentioned had been violated, and the policy thereby rendered void. The court denied the motion and directed a verdict for the plaintiff for the amount of the loss, subject to the opinion of the court at General Term, to which defendant's counsel duly excepted. The court (RAPALLO, J.) said at page

314: " The case seems to have been considered at General Term
on the assumption that the fire was occasioned by the use of
kerosene and to have been decided on the ground that, such use not
having been habitual, the company was not exempt from liability.
The facts stated in the case are not sufficient to show whether the
loss was or was not thus occasioned, and, therefore, it was not a
proper case for a verdict subject to the opinion of the court.   To
render the direction of such a verdict proper all the facts necessary
to enable the court to render a final judgment one way or the other
must be conceded or established beyond controversy.   The case as
presented is deficient in this respect."   The court then proceeded to
consider whether there were any questions for the jury, and held
that there were in that case, and concluded : " We are of opinion that
there was a mistrial and that the judgment must be reversed and a
new trial ordered."

If we are to regard this case as coming to us without exception
and without any contest as to the facts, our duty then will simply
be to pass upon the evidence in the place of the jury and determine
which party should recover in this action.   If, on the other hand,
this is simply a motion for a new trial upon exceptions ordered to
be heard in the first instance at the General Term, then we have
only to consider whether there was any question for the jury and
whether that question is brought before us by the exception finally
taken by the plaintiffs to the direction of a verdict in favor of the
defendant.

We have reached the conclusion that the exception brings before
us the question of the plaintiffs' right to go to the jury upon the
issues in the case, and that the plaintiffs are not concluded by their
waiver of the exceptions taken upon the trial or by the statement
of facts of the trial court which appears in the record before us.
Indeed, the learned counsel for the defendant concedes in his points
that if there were any contested questions of fact in the case upon
which the plaintiffs were entitled to go to the jury, " the court had
no power to direct a verdict subject to the opinion of the General
Term, in which event there has been a mistrial, and a new trial
must be ordered," so that the question before us is whether we can
sustain the plaintiffs' contention that there was a question of fact for
the jury, and, in considering that question, the evidence and the

inferences therefrom must be construed as favorably to the plaintiffs as the case will warrant. This involves a somewhat careful review of the evidence and the facts.

Edwin T. Hitchcock, the agent of the insured, testified that, on the 9th of December, 1892, he applied to the agents of the defendant for an insurance upon the steamer of $50,000, and that the agents agreed to take $40,000 fire insurance on her, and distribute it among several companies of which they were agents, $6,000 of which was apportioned to the defendant, the agent of the insured stating that he had received a telegram that morning from the owners of the vessel; that she was laid up at L'Anse and to procure fire insurance upon her. The agent exhibited this telegram at the time to the defendant's agents and signed a blank application for fire insurance, in which the several companies that were to take the insurance were specified, and upon which the words " Str. *Northerner*, laid up at L'Anse" were written in after it was signed by Hitchcock, but in his presence and with his apparent consent. L'Anse is a point located on the northern peninsula of Michigan, on this side of Keweenaw Point, about 700 miles from Buffalo.

Upon this application a policy of insurance was prepared, but it was never delivered to the insured. The master of the *Northerner*, Peter A. McKinnon, testified that the vessel left Buffalo on December second, and that on the morning of the seventh or eighth of December she got ashore on Keweenaw Point, and was relieved by throwing a part of her cargo overboard, and she proceeded to L'Anse in a leaky condition. When there, the master telegraphed to Captain Ward, of Detroit, who had chartered the vessel for the season and had control of her, telling him what had happened and asked him for instructions. Ward telegraphed " better lay her up," and the master " obeyed those instructions, and commenced laying the *Northerner* up; got chains out of the locker, cleaned her up some, turned the yawl boats upside down, put the tackles away, and the engineer commenced to disconnect her engine." He thinks this was the eighth of December; that it took a day to do these things that were necessary to lay her up; that she continued to lie there until the twelfth of December, when she caught fire and was burned. One Captain Rounds came there the night of the ninth, and assumed to represent the marine underwriters, and directed that the vessel be taken to Duluth; that,

without change of position, the vessel was got in readiness to go to Duluth on the night of the eleventh of December. Captain Rounds had agreed to go with them, but, at the last moment, Rounds refused to go and abandoned the vessel; and before the fire actually occurred the master had again changed his mind, and concluded to remain at L'Anse, and to make a slight change of position of the boat, so as to give a more secure position for the winter.

Another witness for the plaintiffs testified that he was the mate of the vessel; that the seventh or eighth of December she went to L'Anse, where they obtained orders to lay her up, which they proceeded to do, and took steps substantially as stated by the other witness for that purpose. On his cross-examination he says : " We commenced laying up on the ninth. It was in the morning, and we kept at work until the morning of the tenth, and then we began refitting her on the morning of the tenth. We had not completed laying her up when we began to refit her. She burned on a Monday morning. We started to fit her out on the Saturday morning before she burned. We had got the chains up, but we had not put them out. In laying a boat up there it is customary to use a chain to moor her, and that is why we got the chains up ready to put out.

A telegram was produced from Charles H. Blakeslee, one of the owners, dated at Rochester, December 6, 1892, to Eber Ward, the lessee, at Detroit, which was as follows : " Where is *Northerner ?* lay her up; cannot permit her to run further." This telegram was received by Mr. Ward before he ordered the boat laid up as above stated. Mr. Blakeslee testified that when he was advised that the *Northerner* had met with this disaster and gone to L'Anse he did not in any way consent to her proceeding further on the voyage.

John Kelderhouse testified that he had owned a great many vessels, had a good many vessels insured, and testified without objection as an expert upon the subject, and stated : " I understand about a vessel being laid up, when you go to an insurance office to get fire insurance that we are commencing to lay up. When we speak of a vessel as being laid up, we simply mean that she has reached a port of safety with the intention of staying there; and in this matter of work to be done, some do more and some less. Some longer laying up than others, and some lay up better than others; sometimes they keep the engine in readiness to work all winter. I

have known one to have her boiler ready to work all winter long. I do not think they lay up generally alike; they vary."

Edward Smith was sworn for the plaintiff; was a vessel owner, had experience and was asked as an expert without objection: " Q. When you apply for insurance, what do you understand by the term 'laid up ?'  A. I usually govern myself to have the winter fire insurance placed at the expiration of the marine.  I don't think everybody lays up alike.  Some do more work than others.  Everybody does not take out chains.  They turn over their boats unless they don't mind much about taking care of their property.  The engine is not often kept so that it can be used during the winter unless the vessel has been ashore or something that required steam to pump her during the winter, more than could be done by hand; then it might be kept; it would be cheaper; seventy-five per cent of the vessels have shipkeepers living on board, and they have lamps of course; sometimes it takes several weeks to lay up a vessel."

The defendant offered no evidence, but lays great stress upon the fact that after the arrival at L'Anse, and when the vessel was substantially laid up under the direction of Capt. Rounds, the master, without authority from the owners or the lessee of the vessel, and against the express directions of the lessee (Mr. Ward), had concluded to go to Duluth, and had taken some steps to put the vessel in condition to start, but without actually starting or at all changing her position, when this intention was abandoned, and the original intention of remaining at L'Anse for the winter, and laying the *Northerner* up there, was resumed.

The learned counsel for the defendant admits that, to justify the direction of the verdict, it must clearly appear that the vessel was not laid up at L'Anse within the meaning of the insurance contract, and claims that taking the whole evidence together such is the only rational view to be taken of the evidence.  In this we cannot concur.  There was certainly some evidence to go to the jury upon the question as to whether the vessel was laid up at the point mentioned at the time the insurance was effected and the fire occurred.  It is clear that the vessel was lying in the harbor of L'Anse, and that the men upon the vessel were busy fitting her for winter quarters at that point at the time the insurance contract was made (the ninth of December); that on the twelfth of December, when the fire occurred,

all intention of proceeding further on the voyage or leaving this port of safety had been abandoned, and nothing appears to have occurred in the interim to have increased the risk or endangered the vessel, and without desiring to express any opinion upon the weight of the evidence to influence the jury upon another trial we are clear that there was evidence, or at least that there could be drawn from the evidence, taking it altogether, the inference that the vessel, within the spirit and purpose of the contract of insurance, was laid up at L'Anse, both at the time of the making of the contract and at the time of the destruction of the vessel.

As before said, the policy of insurance was not introduced in evidence. The counsel for the defendant makes several points upon the assumption that the assumed policy had been proved and that its conditions had been violated by the plaintiffs. It is difficult to see how such objections can be made, predicated upon a paper that is not in the case. A blank form of policy appears in the evidence, which the defendant seems to assume is the kind of policy that would have been issued if one had been filled up, executed and delivered to the plaintiffs, and he makes the point, based upon a paragraph in the assumed policy, that by the terms thereof it was void if petroleum or any of its products of a greater inflammability than kerosene oil of the United States standard was kept, used or allowed on the vessel, and that it was the undisputed evidence of the master that there was in the neighborhood of 2,000 barrels of kerosene oil on the vessel, which was being carried as a part of her cargo. Assuming that this point is available under the circumstances, it is not well taken because it did not appear from the evidence that the kerosene on board of this vessel was of greater inflammability than kerosene oil of the United States standard.

Another point is that the assumed policy contained a special provision that "No suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity * * * unless commenced within twelve months next after the fire." Assuming again that this point is available (there having been no policy proved), it is a sufficient answer to say that this action is not upon the policy. The defendant had refused to deliver a policy and the plaintiffs were consequently obliged to bring this action to compel a delivery of the policy and payment of their claim.

Where the insurance company refuses to deliver the policy of insurance, and resists payment of the loss on the ground that no obligation to insure was entered into, it cannot take advantage of a limitation clause that might have been inserted in the policy had one been delivered. (*Smith* v. *Glens Falls Ins. Co.*, 62 N. Y. 85; *Shaw* v. *The Republic Life Ins. Co.*, 69 id. 286; *Taylor* v. *Merchants' Fire Ins. Co.*, 9 How. [U. S.] 390; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235.)

A further point is made by the defendant that the agent, Hitchcock, misrepresented the condition of the boat as being laid up at L'Anse, when it in fact was not so laid up. That was a question of fact for the jury, to be passed upon by it, and depends upon the fact to be found, whether the boat was or was not laid up at the port indicated. None of the objections last considered impressed the trial court, if urged before it, as the verdict was directed solely upon the ground that the boat was not laid up at the time of the making of the contract of insurance and of the destruction by fire of the vessel.

While the plaintiffs demand equitable relief in this action, and it might well have been treated as one of equitable cognizance purely, the parties seem to have acted upon the assumption that it was a proper case for the jury, and no point is made here but what it was. It can be further treated as such, and a recovery can be had upon the parol contract of insurance, if the jury shall find with the plaintiffs. (*Insurance Company* v. *Colt*, 20 Wall. [U. S.] 560; *Ellis* v. *The Albany City Fire Ins. Co.*, 50 N. Y. 402.)

The verdict for the defendant should be set aside and a new trial ordered, with costs to abide event.

LEWIS, BRADLEY and ADAMS, JJ., concurred.

Verdict set aside and new trial ordered, costs to abide the event.