PIOTR GLOGOWSKI and Another, Respondents, *v.* ERIE AND NIAGARA COUNTY FARMERS INSURANCE ASSOCIATION, Appellant, Impleaded with the BANK OF HAMBURG and Others, Respondents.

Fourth Department, May 5, 1926.

Insurance — fire insurance — action on policy issued by co-operative insurance association — policyholders were required to be members of association — po icy in question originally issued to plaintiff's grantor — defense that policy was not properly transferred to plaintiff — verdict of jury that local agent had general authority to act in making transfer is against evidence.

In an action to recover on a policy of fire insurance issued by a co-operative fire insurance association to the grantor of the plaintiff, in which it appears that the

rules of the association require the insured to be a member thereof, and that the plaintiff on the transfer of the property to him did not, so far as the documentary evidence shows, become a member of the association and have the policy transferred to him, the verdict of the jury that a local agent of the defendant, whom the plaintiff claims represented to him that if the insurance premiums were paid the policy would be properly transferred, possessed general authority to act for and on behalf of the defendant is against the evidence, for it clearly appears that said local agent did not possess any actual authority and was not held out by the defendant as having apparent authority to act for it in the transfer of the policy, but possessed merely the power to receive applications for insurance and for membership, which he was required to submit to the home office for action.

APPEAL by the defendant, Erie and Niagara County Farmers Insurance Association, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 23d day of April, 1925, upon the verdict of a jury; also from said judgment as amended by a *nunc pro tunc* order entered in said clerk's office on the 28th day of May, 1925, and also from an order entered in said clerk's office on the 29th day of May, 1925, denying said defendant's motion for a new trial made upon the minutes.

*Carlton E. Ladd,* for the appellant.

*Donnelly, O'Neil & Lindal* [*Daniel J. O'Neil* of counsel], for the respondents.

CROUCH, J. The defendant association is a co-operative insurance corporation organized under article 9 of the Insurance Law. On May 17, 1922, it issued to one Walla and wife a fire insurance policy covering certain buildings and personal property located on a farm in the town of Boston, Erie county, N. Y. The date of expiration was May 11, 1927. The policy was held by the Bank of Hamburg as first mortgagee. On October 17, 1922, Walla and wife sold and transferred the farm and personal property to plaintiffs, taking a second mortgage on the farm and a chattel mortgage on the personal property as security for part of the purchase price. The interest of the Wallas in the insurance policy was also transferred as part of the transaction. The property was destroyed by fire on September 27, 1923. The defendant association denies liability upon the ground that no notice of the change of ownership and of the additional incumbrances was ever given to it; that no agreement recognizing such changes and additions was ever indorsed on the policy; and that plaintiffs never complied with the provisions of the insurance contract relating to a transfer of membership and insurance.

The policy complied with the requirements of the then existent

section 265 of the Insurance Law (as added by Laws of 1910, chap. 328).* It conformed to the standard fire policy, stated on its face that it was issued on the co-operative plan and had printed on the back thereof a copy of the by-laws. Under the statute and by-laws all policyholders are and must be members. The by-laws provide that applications for membership and for insurance must be made on printed forms and must be approved by the executive committee; and a fee of two dollars must be paid when the application is signed. Since only members may be policyholders, it is necessary for the transferee of a policy to become a member before the association indorses consent thereon and recognizes him as a policyholder. Applications for transfer of insurance and for membership must be made on printed forms by transferees, must be approved by the executive committee and a fee of one dollar must be paid. This is referred to in the by-laws as a " change of insurance." The executive committee meets monthly and may adjourn from time to time as business requires. Perhaps for that reason the by-laws provide that " the property shall be held insured until the applicant is notified of modification or rejection by the secretary." There is nothing in the reason for or in the language of this provision which makes it inapplicable to a transferee applicant. We think it applies to all applicants whether original or otherwise.

The by-laws also provide that a resident agent or collector, the office to be held by one person, who must be a member, may be appointed for each town in which as many as twenty-five members are insured. Such resident agent is entitled to receive the membership fees from new members and the fees paid by members for change of insurance, as mentioned above. The by-laws throw little light on the duties and authority of a resident agent. Reading them in connection with the testimony, however, it appears that he took applications for membership and insurance, both original and on transfer, collecting the appropriate fees, and sent them to the home office for the action of the executive committee. In the case of transfers he also procured and sent along the policy with the application. He kept on hand application blanks which were furnished by the home office. He also collected assessments as they were levied and whenever his collections amounted to $200, he remitted to the home office. It seems also to have been part of his duties to appraise the properties when applications were made.

The resident agent in the town of Boston was one Dye. There is evidence tending to show that on November 8, 1922, Glogowski,

---

* Since amd. by Laws of 1924, chap. 538.—[Rep.

with one Janik as interpreter, went to Dye, and told him in substance that he had bought the farm from Walla; that he had a notice of an insurance assessment from the association addressed to Walla, which he desired to pay; that he then learned the insurance had not been transferred to his name; that Dye said: "If you will pay I will give you the receipt for the money   *   *   *   and I am going to the Bank of Hamburg and see the fire insurance policy and have the name changed and it need not worry you;" that he paid Dye the amount of the assessment and took a receipt therefor signed by Dye as "collector;" that he told Dye he had given a second mortgage to Walla, but did not speak of the chattel mortgage; that at Dye's request he signed a paper of some kind by making his mark, Janik spelling Glogowski's name for Dye, who wrote it out.

The complaint alleged that Dye was a general agent authorized to receive applications, to issue policies, to continue policies in force, to make all proper indorsements thereon upon the transfer of title and generally to perform all and every act and thing which a general agent might or could perform; and in substance that Dye's promise to get the policy and have the proper indorsements made thereon was the promise of the defendant association.

The trial judge sent the case to the jury on that theory, expressly charging that there was no proof that the plaintiffs ever signed a membership application. The theory that Dye, as an agent of limited authority, took an application from plaintiffs, and that, pending the action of the executive committee thereon, and until notice of modification or rejection, the property under the provisions of the by-laws was held insured, was either not advanced at the trial or was rejected.

The sole question, then, is whether, under all the evidence, Dye's authority was so broad as to make his act the act of the defendant association. The terms "general agent," "special agent" and their variants are commonly used for convenience but are of vague content. The extent of an agent's authority is not determined from his title alone. The question is always whether the particular act of the agent is within the scope of his actual or apparent authority, or, as it has been stated, "whether the third party had reasonable grounds for believing, under all the facts of the case, that the principal had authorized the act." (Vance on Insurance, 306.) The policy contained the usual provision against waiver by any officer or agent except in writing indorsed upon or attached thereto. But that is not conclusive. The question still remains one as to the extent of authority. (*Smaldone* v. *Ins. Co.*

42

*of North America,* 162 N. Y. 580; *Manchester* v. *Guardian Assurance Co.,* 151 id. 88.) So far as concerns Dye's actual authority to do the acts which it is claimed he promised to do, the evidence is undisputed that he had none. Nor is the case much stronger as to his apparent authority. He was the general storekeeper and postmaster at Boston, a hamlet in Erie county. Incidentally, he took applications both original and upon transfer for membership and for insurance in the defendant co-operative association of which he was a member. In connection therewith he sometimes made appraisals of the property proposed to be insured. All applications and appraisals were passed along to the home office for action. He had no authority to pass upon and accept risks, to agree upon terms, to execute and deliver policies, or to make any indorsements thereon. Nor is there any evidence that he had ever done so or that the association had ever in any wise held him out as having such authority. His name does not appear as agent or otherwise on the policy nor is his counter signature necessary to its validity. The principle upon which the long line of cases beginning with *Ellis* v. *Albany City Fire Ins. Co.* (50 N. Y. 402) and including *Manchester* v. *Guardian Assurance Co. (supra)* were decided, is not applicable under the facts here.

The verdict is contrary to the evidence on the question of authority. The judgment and order should be reversed on the facts and a new trial granted, with costs to the appellant to abide the event.

HUBBS, P. J., CLARK, DAVIS and TAYLOR, JJ., concur.

Judgment, amended judgment and order reversed on the facts and a new trial granted, with costs to appellant to abide event.