(42 App. Div. 588.)

IMPERIAL SHALE–BRICK CO. v. JEWETT et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. INSURANCE—EXTENT OF LIABILITY OF LLOYD'S INSURERS.

Upon an application to insurance agents at C. for insurance on a cargo, a certificate of marine insurance was delivered to the owner certifying that it was insured in the sum of $2,000, under and subject to conditions of an "open policy" issued by underwriters at B. doing business as

Lloyd's insurers. The policy limited their liability in the manner of Lloyd's insurers, and provided that no one of the underwriters should be, in any event, "liable under this policy for an amount exceeding $500, * * * the liability assumed hereby by each underwriter being separate and individual only, as if each underwriter had issued to the insured herein a separate policy; their liability being several, and not joint." *Held*, in an action to recover on the policy for the loss of the cargo, the assured could not plead ignorance as to the character of the insurance or the limitations of the policy referred to in the certificate, in the absence of any fraud, but he was bound to look to the policy for the conditions of his insurance.

**2. SAME.**

The fact that underwriters doing business as Lloyd's insurers were unlawfully engaged in business does not render them jointly liable as common-law partners, where the assured contracted with them as Lloyd's insurers, and expressly stipulated with them as to extent of the liability.

Appeal from trial term, Erie county.

Action by Imperial Shale-Brick Company against Edgar B. Jewett and others. From a judgment for plaintiff entered after trial by the court, defendants appeal. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and NASH, JJ.

Arthur W. Hickman, for appellant Hickman.
George Clinton, for other appellants.
Roger M. Lee, for respondent.

NASH, J. The action is brought to recover upon a policy of insurance the value of a cargo of brick shipped by the plaintiff on the 2d of October, 1895, at Cleveland, Ohio, on board a lake schooner, and lost on Lake Michigan some time during the same month. The defendants were underwriters conducting a fire and marine insurance business as Lloyd's insurers, having their office at Buffalo, N. Y., at which place they commenced business in the year 1895, under the name of the "Buffalo Fire & Marine Underwriters," and were successors of an association of underwriters, of the same character, who had in March, 1892, associated themselves together as Lloyd's insurers in New York City, under the name of the "Pacific Fire Lloyd's of New York." A day or two prior to such shipment the plaintiff applied to C. R. Jones & Co., vessel and insurance agents at Cleveland, Ohio, for marine insurance on said cargo. About October 5th or 6th said agents delivered to plaintiff, in Ohio, a certificate of marine insurance in the sum of $2,000, said certificate reading as follows:

"No. 363.                                                    $2,000.00
                                        "Buffalo, N. Y., Oct. 5, 1895.

"This is to certify that the Imperial Shale-Brick Co. is insured under and subject to the conditions of open policy No. 4,007, issued by the Buffalo Fire and Marine Underwriters of Buffalo, N. Y., at the Buffalo, N. Y., agency, in the sum of two thousand dollars, on paving brick, on board cargo of schooner John Magee, at and from Cleveland, Ohio, to Waukeegan, Michigan. Loss, if any, payable to order of assured thereon and return of this certificate. Valid when countersigned by the authorized agents of this company at Buffalo, N. Y.

"Countersigned by: Hiram H. Smith, Agent.
                                        "Henry S. McFall, Attorney."

Upon the delivery of this certificate, the plaintiff paid C. R. Jones & Co., at Cleveland, Ohio, $30 as the premium for the said insurance.

The open policy No. 4,007, mentioned in the certificate, was an open policy of insurance, by which the defendants, in due form of policies of marine insurance, on account of Hiram Smith, or whom it might concern, did, by its terms, make insurance, and cause the several persons indorsed thereon, or in books attached thereto, to be insured, upon all kinds of lawful goods, wares, and merchandise, laden on board vessels on lawful or regular route and voyage, for the several amounts and at the rates indorsed thereon, subject to the conditions thereof, and in extenso set out the premiums and terms of an open policy of marine insurance, which enables the said Hiram Smith to issue certificates of insurance of the character of the one issued to the plaintiff, so that the holder thereof would be insured by the defendants, as underwriters, in the sum named in the certificate, but upon the terms and conditions of said open policy. The said open policy, after stating the terms, conditions, and manner of insurance, contained further conditions limiting the liability of the defendants, as underwriters, in the manner of Lloyd's insurers, providing, among other things, that:

"This policy is made and accepted upon the following further condition: The liability of each of the underwriters, in case of any losses, and the amount insured by each underwriter, shall be his proportionate part of the aggregate amount payable to the insured upon such loss, and no one of the underwriters shall be in any event liable under this policy for an amount exceeding the sum of five hundred dollars. In no event or contingency shall any underwriter hereon be liable for any part of any underwriter's liability hereon, the liability assumed hereby by each underwriter being separate and individual only, as if each underwriter had issued to the assured herein a separate policy; their liability being several, and not joint. No action shall be brought to enforce the provisions of this policy except against the general manager, as attorney in fact and representing all of the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility hereunder. It is hereby understood and agreed that each underwriter assumes his proportionate share of the liability on all certificates hereinafter issued under this policy."

Said open policy bore date June 19, 1895, and was executed by the defendants, by Henry S. McFall, their attorney and manager.

It is not questioned but that insurance may be made by parties as Lloyd's insurers, and the underwriters limit their liability as in the open policy of the defendants provided. It has been recently so held. Concentrating Works v. Ackermann, 6 App. Div. 540, 39 N. Y. Supp. 585; Lawrence v. Schaefer, 20 App. Div. 80, 46 N. Y. Supp. 719. But it is alleged, and the findings of the court are, that:

"Mr. Keplinger, who acted for the plaintiff in the matter, did not know that the Buffalo Fire & Marine Underwriters was a Lloyd's association; did not know what a Lloyd's association was; did not know that this certificate was issued on behalf of nineteen individual underwriters, but supposed, from the language contained in it, that it was issued by a corporation; did not know to whom open policy No. 4,007 was issued, or where it was. None of these matters was called to his attention by any one, and he had no notice or knowledge of any sort of any attempt on the part of the insurers to restrain or limit their liability as attempted in the last four paragraphs of the policy, and plaintiff never assented to any such attempted restrictions and limitations. He did not see the policy, which was at all times in the defend-

ants' safe in their home office in Buffalo, while he was at all times either at Cleveland or Canton, Ohio. And it does not appear that C. R. Jones & Co. had any knowledge or notice of the terms of this policy, or that defendants were doing a Lloyd's business, or that the Buffalo Fire & Marine Underwriters was an unincorporated association."

These are findings of want of actual knowledge, as distinguished from the knowledge furnished by the certificate delivered to the plaintiff, and the notice there given, in express terms, that the plaintiff was thereby "insured under and subject to the conditions of open policy No. 4,007, issued by the Buffalo Fire & Marine Underwriters at Buffalo, N. Y., at the Buffalo, N. Y., agency." There was no fraud or misrepresentation of any kind. It is found that it does not appear that during the entire transaction anything was said to any one of the persons who took part in it as to what sort of an association or company the Buffalo Fire & Marine Association was. It was taken for granted that every one understood the nature of the business that was being transacted. The plaintiff had before taken several of these certificates of insurance from the defendants. The defense is that the plaintiff's agent, Mr. Keplinger, did not know that the Buffalo Fire & Marine Underwriters was a Lloyd's association; did not know what a Lloyd's association was, but supposed, from the language of the certificate, that it was issued by a corporation; and did not know to whom open policy No. 4,007 was issued or where it was. He knew, or he was bound to know, that the certificate stated that there was such a policy, and that it was referred to for the conditions of the insurance. They were not in the certificate. That he knew, and also that he must look to the open policy for the conditions of his insurance. If he wished to know with whom or the character of the company he was insured with, that was a proper subject of inquiry. He could not shut his eyes, remain silent, and be permitted to say he did not know. In a case similar to this, it was held that ignorance of the limitations in the policy did not excuse the insured. The plaintiffs had taken a mere receipt, entitling them to the policy. It was said that the defendant was in no way responsible for the plaintiffs' ignorance. It was their business to know what was contained in their contract of insurance. De Grove v. Insurance Co., 61 N. Y. 594–605. So here the plaintiff cannot be allowed to plead ignorance of the character of the insurance it obtained, or of the terms and conditions of the policy to which the certificate referred.

The point is made by the respondent that the defendants were unlawfully engaged in business as insurers, and that by reason of that fact and their methods of business they became and were common-law partners, jointly liable as such. The difficulty with this proposition is that the plaintiff contracted with the defendants in their capacity as Lloyd's insurers, and expressly stipulated with the defendants as to the measure and extent of their liability.

Judgment reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.