QUINCY C. DE GROVE, Respondent, *v.* THE METROPOLITAN INSURANCE COMPANY, Appellant.

An agent of an insurance company has an apparent authority only to insure in the modes authorized by the charter of the company, and upon the terms and conditions contained in its policy in ordinary use.

Where, therefore, an agent of a fire and marine insurance corporation, upon application for a marine insurance, instead of delivering a policy, executed and delivered to the applicant a receipt for the premium, which contained a brief statement of the risk insured, *held*, that the receipt was simply evidence that the assured was entitled to an insurance in the usual form; and that the policy used by the company was to be looked to, to ascertain the limitations and conditions of the contract, and the liability of the company.

The form of policy used by the company contained conditions that, in case of loss or damage, suit must be brought within twelve months after it occurred; also, that no loss should be paid unless it exceeded five per cent of the amount insured, and a statement that in case of loss it would be paid within thirty days after proof thereof, and of interest. A loss having occurred, plaintiff presented proofs showing it to be less than five per cent, and upon this ground defendant refused payment. *Held*, that the fact that defendant, before the expiration of the twelve months, based its refusal to pay solely on the only condition then available, was not a waiver of the limitation as to the time within which suit was to be commenced, and that ignorance on the part of plaintiff that the form of policy contained such a limitation did not affect defendant's right to avail itself of it.

Also, *held* (EARL, C.), that the proof required, as a condition precedent to payment, should show the character and extent of the loss, and the assured could recover no more than the amount so claimed; and that as

the proof thus furnished showed a loss of less than five per cent, plain-
tiff could not recover, although the proof on the trial tended to show
that the loss was in fact greater.

Defendant's answer, after setting forth the said conditions of the policy,
averred that more than twelve months had elapsed since the making of
any claim for loss or damage. *Held*, that the answer was sufficient to
enable defendant to avail itself of the defence that the suit was not
brought within the prescribed time.

(Argued September 28, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the
Supreme Court in the second judicial department, affirming
a judgment in favor of the plaintiff, entered upon a decision
of the court upon trial without a jury.

This action was upon an alleged insurance. The complaint
alleged an insurance of plaintiff's assignors by defendant, on
the 12th day of December, 1865, through one Grannis, its
agent, at Macon, Georgia, upon forty-one bales of cotton, for
the amount of $8,000, against loss or damage by fire or
otherwise during its transportation from Macon to New York
city, and alleges damage by fire on the eighteenth day of
December to four bales to the amount of $600.04, and that
due proof of such loss had been made and payment thereof
demanded; and also alleges an assignment of the claim to
the plaintiff. The answer, after admitting the incorporation
of the defendant and the Macon agency, and denying all the
allegations not admitted, contains the following:

"Third. These defendants aver that on the said 12th day of
December, 1865, the said Grannis held an agency inland
navigation policy of this company, upon which he indorsed
risks taken for the account of persons other than himself,
which policy was the usual inland navigation policy issued
by these defendants; by the terms of which it was, among
other things, provided that no "suit or action against this
company for the recovery of any claim for loss or damage,
upon, under or by virtue of this policy, shall be sustained in
any court of law or chancery, unless such suit or action shall
be commenced within the term of twelve months next after

the loss or damage shall occur ; and in case any such suit or action shall be commenced after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced." And by said policy it is further provided " that no partial loss or particular average shall in any case be paid, unless amounting to (5) five per cent." And they further aver that said Grannis had no right or authority to bind these defendants upon any inland risk, except by a proper indorsement on such agency policy, and not otherwise.

Fourth. These defendants further aver that more than twelve months have elapsed since the making of any claim for loss or damage upon any risk insured against and indorsed upon the said policy of insurance so issued to the said Grannis, the agent of the said defendants.

On the trial it appeared that the defendant's company had two branches of business ; one insurance against fire, and one marine and inland navigation insurance. These two branches were in separate departments. That in July, 1865, Grannis had been appointed the defendant's agent at Macon, Ga., by written power " to receive proposals for insurance against loss or damage by fire; to act as a surveyor of buildings or other property offered for insurance in Macon and vicinity, and to make insurance thereon by policies signed by the president and secretary, and countersigned by the said E. C. Grannis, and generally to do and perform all other acts necessary to the successful prosecution of the business of *fire* insurance." Under this commission he was engaged until the 19th of August, 1865, when he suggested to the company he could do well in their marine branch, and requested them to send him papers for that purpose. To this the company assented by letter, September 9, 1865, sending him on one open policy, 100 notices of indorsement, to be forwarded as each risk was taken thereon, and twenty-five blank marine policies.

That the open policy insured Grannis, for whom it may

concern, as hereon indorsed, and was dated September 8, 1865. This policy and all the blank marine policies sent Grannis contained a condition of no loss payable, if not over five per cent, and the twelve months' limitation, as alleged in this answer. Grannis was also furnished with fire policies to countersign from July, 1865, in all of which the twelve months' condition was contained. The marine and inland insurance business done by Grannis for the company was mainly by indorsements on his open policy, he sending on the notices of indorsements to be made to the company.

On the 12th of December, 1865, Grannis, upon application of the defendant's assignors for a policy, delivered to them the following paper:

"E. C. GRANNIS,

"GENERAL INSURANCE AGENCY,

"No. 16.         MACON, GEORGIA.         $8,000.

"Received of Johnson, McMahon & Co., of Macon, Ga., $100 premium on their application to the Metropolitan Insurance Company of New York, for insurance on $8,000 for the term of trip from Macon, Georgia, to New York, on the following property, to wit: On forty-one bales of cotton from Macon to Alexandria, by railroad, on box car, and by steamer from Alexandria to New York. Dated at Macon, this 12th day of December, 1865.

"E. C. GRANNIS, *Agent.*"

The existence of this receipt was never known to the company.

Johnson, McMahon & Co. shipped the forty-one bales of cotton on 14th December, 1865, from Macon to Alexandria by rail, and thence by steamer to New York, consigned to Powell, Green & Co. The Western and Atlantic railroad transported the cotton to Dalton, Georgia, and it was partially injured by fire on the route. At Dalton, the connecting line to the East Tennessee and Georgia railroad refused to take the two bales, as damaged by the fire. No notice of any injury seems to have been given to Grannis until after the

arrival and sale of the rest of the cotton in New York when, in May, 1866, McMahon notified Grannis of the damage to the two bales, and, in June, Grannis wrote the company. They suggested that the damaged cotton be appraised and sold. This was done, and the loss ascertained at $306.84; and the plaintiff's assignors, on the 11th of August, 1866, made out their proofs of damage at that sum, and on the thirteenth these were forwarded to the defendant by Grannis. The defendant immediately replied, refusing payment on the ground the loss was not five per cent of the amount of insurance, $8,000. Subsequently, in December, 1866, McMahon gave to the defendant an affidavit of one Bard, railroad superintendent, that four bales were damaged, and that two only were rejected by the E. T. and G. R. R. at Dalton, and also a statement of Powell & Co. that one of the injured bales that went to New York was damaged $78.14. No other proofs of loss were ever furnished.

The court found that the insured, at the time of the insurance, requested a written policy for such insurance, which the agent did not give, because, as he said, it was unnecessary expense, but he gave a receipt for the premium paid, and informed the insured that it was his custom to give this receipt in place of a policy in such case; that on the trip, on the 10th day of December, 1865, four of the bales of cotton were damaged by fire, and one of the four was lost in transit, and never arrived at its destination; that on two of said bales the loss was, after examination by defendant's agents and determination by them of the cause of the damage, fixed by agreement at $306.84, about August 13, 1866; That the loss on a third one of the damaged bales was admitted on the trial, and was at least seventy-eight dollars and twelve cents, and that the loss on the fourth damaged bale was equal to the loss on said third damaged bale. It also found that it was no part of the said agreement of December 12, 1865, between defendant's agent and the insured, that no loss should be paid unless it exceeded a certain amount, or that a suit should not be brought except within a limited period other than as pro-

vided by law; that due proofs of loss were furnished to the defendant, were considered by it, and retained for a long period, and until January 5, 1867, when it returned them, and rendered to the insured its decision not to pay any thing on said agreement, on the ground that the loss did not amount to five per cent, and that defendant never raised any other objection to paying the loss; that a five per cent loss would amount to $400. He also found that if the limitations alleged in the defence were contained in the conditions of any one of the policies in use by defendant, such conditions were not communicated to the insured before the loss occurred, but were waived by it even if ever assented to by the assured by implication, and he ordered judgment for the plaintiff for $463.08, and interest from February 5, 1867, thirty days after defendant's final refusal to pay.

The defendant excepted severally to each finding of fact and of law.

*Samuel Hand* for the appellant. No contract binding defendant to pay the loss can be deduced from the receipt given plaintiff by the agent. (1 Phil. on Ins., 11, 27, § 35; *Tyler* v. *N. A. Ins. Co.*, 4 Robt., 151; *Bap. Ch.* v. *Bklyn. Ins. Co.*, 28 N. Y., 161, 164.) The failure to sue within twelve months after the loss was fatal to a recovery. (*Roach* v. *N. Y. and Erie Ins. Co.*, 36 N. Y., 546; *Ripley* v. *Ætna Ins. Co.*, 30 id., 136; *Mayor* v. *Hamilton Ins. Co.*, 39 id., 45.)

*Henry Broadhead* for the respondent. Strict proofs of loss were unnecessary. (*O'Niel* v. *Buff. F. Ins. Co.*, 3 N. Y., 122; *Bumstead* v. *Dividend Ins. Co.*, 12 id., 81.) The parol contract of insurance was valid and could be enforced without a policy, and the action of defendant's agent amounted to a waiver of the provisions of its policies as to strict proofs and suit within one year. (*Ide* v. *Phœnix Ins. Co.*, Alb. L. J., July 9, 1870; *Ames* v. *N. Y. U. Ins. Co.*, 14 N. Y., 253, 264; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351;

*People* v. *Liv. L. and G. Ins. Co.*, 2 N. Y. S. C., 273, 274.) This was a parol insurance uncontrolled by a policy. (*Kelly* v. *Comm. Ins. Co.*, 10 Bosw., 82; *Fish* v. *Cottonet*, 44 N. Y., 538; *Bodine* v. *Ex. F. Ins. Co.*, 51 id., 117; *Sanborn* v. *Fireman's Ins. Co.*, 82 Mass., 448.) The waiver of the conditions was found at Circuit as a matter of fact and cannot be reviewed. (*Bowman* v. *Agri. Ins. Co.*, 2 N. Y. S. C., 266; *Baker* v. *Spencer*, 47 N. Y., 533, 565.) The retention of the proofs was a waiver of all objections to them. (*Bush* v. *West. F. Ins. Co.*, 2 N. Y. S. C., 632; 4 Bosw., 1; 2 N. Y., 53; 57 Barb., 578; 23 Wend., 525; *Dolm* v. *Farmers' Ins. Co.*, 5 Lans., 275.)

EARL, C. The defendant is a domestic corporation, organized under chapter 308, Laws of 1849, chapter 2, Laws of 1853, and chapter 106, Laws of 1863, and it was authorized by its charter to engage in fire insurance, and in marine and inland transportation and navigation insurance.

It was engaged in both kinds of insurance, kept each kind separate in separate books, and had different policies for each. Grannis, defendant's agent at Macon, was authorized to engage in both kinds of insurance, and had blanks for both kinds.

On the 12th of December, 1865, McMahon, one of the assured, applied to Grannis for an insurance upon the cotton, and asked him for a policy. Grannis informed him that it was not his custom to give a policy, that it was an unnecessary expense, and that it was his custom to give such a paper as the receipt dated December 12, 1865, which was binding, and he, as a witness for plaintiff, testified that, in all cases where a policy was asked for, one was made out and given to the party insured, and the receipt was taken up, if one had been previously given, as he invariably told parties insuring that it was better to have the company's policy in case of loss. He reported the insurance to the company as a marine risk, and it was entered upon the open marine policy, which had been issued to him for the purpose of such risks, and was

manifestly understood by him and the company as a risk in the marine department.

The plaintiff claims that the receipt embodies the whole contract of insurance, and hence, that the conditions set up in the answer have no application. The defendant claims that this was a mere application for a policy, and that the contract of insurance must be looked for in the form of marine policy used by the company, upon which the risk was indorsed. The judge at Special Term upheld the plaintiff's claim, and the important question for us to determine is whether this holding was correct.

According to plaintiff's claim this was a general insurance against every kind of risk, an insurance that the cotton would safely reach its destination. There were no limitations or conditions in the contract. It was an absolute unconditional insurance against every thing. Such an insurance Grannis had no authority to make. He was authorized to engage in the two kinds of insurance which the company, by its charter, was authorized to make; and he was to insure upon the terms, conditions and limitations mentioned in the blank policies with which he was furnished. Neither was it within the scope of his apparent authority to make such an insurance. It is not probable that any agent ever had such authority, or that any company was ever authorized to engage in such insurance. He was the known agent of a company engaged in fire and marine insurance, and such an agency gave him apparent authority only to insure in the modes authorized by the company's charter, and upon the terms and conditions inserted in their policies in ordinary use. No one could presume, from the fact of his agency for such a company, that he was authorized to make such an insurance as is claimed. Hence, if we assume that the receipt is a complete contract of insurance and that it embodies the whole contract, it would not, being in excess of the agent's authority, bind the company. But the receipt is not a complete contract of insurance. It does not purport to be. It is evidently inchoate. It does not even state that the insurance is

against loss or damage from any cause. It does not specify
the peril or risk insured against, and this every insurance
policy must do. (1 Phil. on Ins., § 35; *Baptist Church* v.
*Brooklyn Ins. Co.*, 28 N. Y., 153, 161, 164; *Tyler* v. *New
Amsterdam Ins. Co.*, 4 Robt., 151.) Hence, if the plaintiff
were obliged to stand upon this receipt as his only policy, he
would fail in the action for the want of a complete contract
in which the minds of the parties had , met. This receipt
must, therefore, when considered in connection with the parol
evidence, be treated as a mere application for insurance, as
evidence that the assured had paid the premium and were
entitled to be insured from its date. (*Ellis* v. *Albany City
Fire Ins. Co.*, 50 N. Y., 402.) The assured must be held to
have known the general character of business done by defend-
ant. They went to the agent to be insured on their cotton
in transit from Macon, by railroad and water, to New York,
and for that purpose needed, and must have expected, a policy
appropriate to the subject-matter and the perils to be insured
against, and, hence, they must have intended to procure an
inland policy, or what is sometimes mentioned in the evi-
dence as a marine . policy. Such an insurance was intended
by the agent and was understood by the defendant; and it
was such an insurance which the assured must have expected.
Every business man knows that all insurance companies have
forms of policies in common use which contain the terms,
limitations and conditions to be inserted in all contracts of
insurance. They must have expected an insurance upon
the usual terms. It cannot be presumed that they expected
a special contract variant from the usual terms imposed by
the company. The assured went to the agent, asked for a
policy, paid the premium, mentioned the subject-matter of
insurance, and the route and destination of the cotton and left
it to the agent to see that their insurance was entered in the
proper department of the company, expecting to be insured
in the ordinary way. They were assured that the receipt
was binding, as it really was. Binding to what? Binding
to an insurance in the usual form. Suppose the assured had

returned the receipt and demanded a policy, what kind of a policy could they have compelled the defendant to issue? Clearly one in its usual form and no other. (Ang. on Ins., § 37; Phil. on Ins., § 15; *Ellis* v. *Albany City Fire Ins. Co., supra.*) It is said in Phillips that a memorandum that a subject "is insured," or "shall stand insured," means that "it is insured, or shall be so, according to the ordinary form of policy used in the office where the memorandum is made." We must, therefore, look to the marine and inland policies used by the company, upon one of which this risk was indorsed, for the limitations and conditions contained in the contract of insurance. The plaintiff, in drawing his complaint, treated proof of loss as a condition precedent and alleged that it had been made and the referee found that it had been made; yet this condition, a usual one in most, if not all, insurance policies, is not found in the contract as claimed by plaintiff. The judge at Special Term also found that plaintiff was entitled to interest on his claim only from thirty days after the final proof of loss had been delivered to the defendant and passed upon by it; and this finding was based upon nothing found in the contract as claimed by the plaintiff, and this condition must have been taken from one of defendant's policies proved upon the trial.

I am unable to discover how force could be given to these conditions and not to the two other conditions set up in the answer. I think they were part of the contract of insurance. According to the one condition the plaintiff could not recover unless his loss was at least $400, five per cent of the whole sum insured. I am satisfied, upon the evidence and the findings of the judge, that the entire loss was upwards of $400. The loss upon three bales of cotton was agreed upon at $384.96, which is only fifteen dollars and four cents less than $400. Two of the bales were so badly burned that they could not be forwarded to their destination. The other two bales were exposed to the same fire and were both burned and were both forwarded, and one of them reached its destination and was found to be damaged seventy-eight dollars and

twelve cents. The other one, the fourth one, did not reach
its destination, and it is not shown what became of it.
There is no positive proof how much it was damaged. All
the proof seems to have been given that was practicable.
It was in the same car with the others. The person who
saved the two bales which were forwarded mentions no differ-
ence in their appearance, and it may be inferred that he
discovered none. Both were so much burned as to attract
attention and be observed. The value of a bale was at least
$200, and a small exposure to fire would cause damage to
at least fifteen or twenty dollars. Hence, I am not prepared
to say that the judge erred in holding that the fourth bale
was damaged as much as the third. But if I were not satis-
fied that it was, as I am quite well convinced that the whole
damage was at least $400, I should apply the rule of *de
minimis* to any error as to the uncertain amount of damage
above that sum at this stage of the case. This condition of
the policy was therefore, so far as concerned the proof upon
the trial, complied with. (*Rogers* v. *Mechanics' Ins. Co.*, 1
Story, 603.)

As to the condition that suit must be brought within twelve
months after the loss or damage shall occur, the defendant
averred in its answer that twelve months had elapsed " since
the making of any claim for loss or damage." Upon the trial
the defendant asked leave to amend the answer by inserting
that the time had elapsed prior to the commencement of the
action, and this was denied and defendant did not except to
the denial. Whether this amendment should have been
allowed was within the discretion of the judge; and even if
it was not, we cannot review his decision here as there was
no exception. I do not agree with the judge who held at
Special Term that this condition was waived. The plaintiff,
under this condition, had twelve months from the time his
cause of action accrued, to wit, from January 5, 1867, in which
to commence his action (*Ames* v. *N. Y. Union Ins. Co.*, 14
N. Y., 253; *Mayor, etc.,* v. *Hamilton Ins. Co.*, 39 id., 45), and
after that date I cannot perceive that the defendant did or

said any thing from which a waiver can be inferred. At or before that date the time had not arrived for the defendant to say any thing about that condition, and its mere silence about it can have no significance. At and before that date it placed its objection to pay upon the only condition then available. Between that date and the commencement of the action there appears to have been no interview or intercourse between the parties. There is no evidence that the assured were ignorant of this condition. Even if they had been, it would have made no difference with the rights of the parties. The defendant is in no way responsible for their ignorance. It was their duty to know what was contained in their contract of insurance, and they had been informed in time that the defendant claimed that the insurance was upon the terms contained in their marine policy and it did nothing to mislead them.

I think the defence was sufficiently set up in the answer and was available to the defendant. The summons and complaint were both dated August 26, 1869, and the suit was commenced on the next day, more than two years and a half after the cause of action accrued, and more than three years and a half after the loss. The condition was set out at length in the answer and it is entirely plain that the defendant meant to rely upon it as a defence, and the plaintiff must have so understood it. The condition appears in the contract upon which the plaintiff must recover if he recovers at all, and, hence, there is no room to presume that the plaintiff was misled by the form of the answer as to this defence. The whole answer shows clearly that defendant meant to rely upon this condition, and the non-compliance therewith by the assured, as a defence. The allegation in the answer as to the lapse of time must, under the circumstances, be construed as having reference to the time of the commencement of the action. The rule which requires that pleadings should be liberally construed with a view to substantial justice between the parties should be applied. (Code, § 159.)

The courts have decided that such conditions are valid.

It is quite essential to insurance companies doing business in all parts of the country, at places distant from their location, that claims should be promptly made, and if disputed promptly prosecuted. Such a condition is not against public policy, and there is no reason why it should be looked upon with disfavor by the courts. A defence based upon it should be treated like any other meritorious defence which the law allows. Hence, I think there was error in not allowing the defendant the benefit of this condition.

There was one other condition precedent which the assured did not comply with. · It was provided in the policy that "in case of loss such loss to be paid in thirty days after proof of loss, and proof of interest in the said property are furnished this company." The plaintiff in his complaint alleged the proof of loss, and the judge in his findings of fact found that the proof of loss had been furnished to the company. To this finding defendant excepted, and if there was an entire want of evidence to show that such proof was furnished to the company the question is before us for consideration upon the exception. The furnishing of proof was a condition precedent to the maintenance of the action. This is an ordinary condition contained in policies of insurance. It must be substantially complied with by the assured. The proof must show the character and extent of the loss and the amount claimed; and upon the trial the assured can recover no more than the amount shown and claimed in his proof of loss. This condition would be of little use if the assured could show and claim one amount in his preliminary proof and then upon the trial recover more. The object of this proof is to give the insurer notice of the nature, circumstances and amount of the loss as a basis of amicable adjustment, and it should be such as to show the insurer's liability and the extent of it. (*Irving* v. *The Excelsior Fire Ins. Co.*, 1 Bosw., 507.) In that case it was held that the assured was barred by his proof of loss as delivered, and that he could not, upon the trial, impeach its truth and recover upon testimony showing a different state of facts; that the insurer had the right to

take and rely upon the facts as the assured stated them. (See, also, Phil. on Ins., § 1805, etc.; Ang. on Ins., § 228, etc.) In this case the assured first made their proofs of loss about August 13, 1866, and then claimed for damage to two bales of cotton only the sum of $306.84. The defendant promptly objected to paying this loss because it did not amount to five per cent of the sum insured. Afterward, in December, the assured furnished further proof of loss which consisted of the affidavit óf Bard that the four bales were damaged by fire, that two were rejected by the connecting line of railroad, and that the other two bales, partially burned or somewhat damaged, were received and forwarded; and also a statement of the consignees that one of the bales received by them, which was one of the four bales, was damaged by fire to the extent of seventy-eight dollars and twelve cents. No proof was furnished or claim made as to the fourth bale; no proof was made that it did not reach its destination, and it does not appear that the assured, at that time, claimed any damage on account thereof. If they claimed any damage on account thereof, they could then have made it as well as upon the trial, and could have stated how much they claimed the damage on that bale to have been. The defendant again declined to pay, distinctly on the ground that the loss was not five per cent of the sum insured. No further claim or proof was made or presented to the defendant before the commencement of this action, more than two and a half years afterward. They should, therefore, be held concluded by the amount of loss which they claimed in their proof. They should not be permitted to lead the defendant into a litigation, and then upon the trial, for the first time, seek to recover by showing that their loss was greater than the amount claimed in their preliminary proofs. In this aspect of the case, it matters not that the margin between the loss as claimed and the $400 was so small. The assured took upon themselves, by the contract, the risk of all loss below $400. The truth probably is, that, at all times before the commencement of the action, the assured acted upon the theory

that they were not bound by the five per cent condition, and the judge at Special Term tried and decided the cause upon the same theory.

Upon the two grounds above mentioned, therefore, I favor a reversal of the judgment and a new trial, costs to abide event.

All concur, on the ground that plaintiff's rights are to be governed by such a policy as the assured was entitled to have upon his application.

Judgment reversed.