GEORGIANA HICKS, Respondent, *v.* BRITISH AMERICA ASSURANCE COMPANY, Appellant.

1. FIRE INSURANCE — ORAL CONTRACT FOR INSURANCE HAS LEGAL EFFECT OF STANDARD POLICY. Where a local agent of a fire insurance company, after a conversation with an applicant for insurance, in which the sum for which the property was to be insured, the premium and period of insurance were discussed and fixed, stated to applicant that "You are insured from noon on the 30th day of December, 1893, to noon of December 30th, 1894," a complete and binding agreement for insurance for the period named is created, and the law reads into the contract the standard fire insurance policy of the state of New York, whether it was referred to in terms or not.

2. PROOFS OF LOSS MUST BE SERVED UNDER SUCH CONTRACT. In an action brought upon such contract to recover for damages caused by fire, the plaintiff must, after proving the contract and loss by fire, show compliance with the requirements of the standard policy and prove service of proofs of loss or a waiver thereof by the defendant; and the charge of the trial court that, as matter of law, it was not necessary for the plaintiff to present to the defendant such proofs of loss, is an error of law for which a judgment for the plaintiff must be reversed.

3. FAILURE TO DELIVER POLICY — NOT GROUND FOR RECOVERY. Where such action has been brought, tried and decided upon the theory that such contract was a completed contract for present insurance, a judgment for plaintiff cannot be affirmed upon the ground that plaintiff sustained damages because defendant had failed to deliver to plaintiff written evidence of the contract, *i. e.*, a policy of insurance. and that, therefore, it was unnecessary for plaintiff to give notice of the fire and present proofs of loss, as required by the standard policy.

4. PROOFS OF LOSS NOT WAIVED BY ACTS OF AGENT OR DENIALS IN ANSWER. An implied waiver of the service of proofs of loss cannot be inferred from the failure of the local agent to deliver the policy, or from his testimony on the trial denying that he ever made a contract to insure the premises ; nor does the insurer's denial, by its answer, of the allegations of the complaint constitute a waiver, the insured having made no claim prior to the commencement of the action that the building was insured by the defendant.

*Hicks* v. *British America Assur. Co.*, 13 App. Div. 444, reversed.

(Argued February 5, 1900 ; decided March 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 8, 1897, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover on an alleged oral contract to insure a certain building in the village of Penn Yan, entered into between George C. Hicks, the plaintiff's assignor, and Melmoth Hobart, the agent of the defendant.

The facts, so far as material, are stated in the opinion.

*A. H. Sawyer* for appellant. Hobart, the agent of the defendant, had no power to make a parol contract of insurance binding upon defendant. The most that he could do was to make a parol preliminary contract to issue a policy with the usual terms and conditions in such policy. (*Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171; *Ellis* v. *A. C. Fire Ins. Co.*, 50 N. Y. 402; *Van Loan* v. *F. M. F. Ins. Assn.*, 90 N. Y. 280; *Hubbell* v. *P. M. Ins. Co.*, 100 N. Y. 41; *Lipman* v. *N. F. Ins. Co.*, 121 N. Y. 454; *Karelsen* v. *S. F. Office*, 122 N. Y. 545.) The refusal of the trial court to grant the defendant's motion for a nonsuit at the close of the plaintiff's case, upon the ground that there had been no service of notice or proofs of loss, was error. (*Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Sergent* v. *L. & L. & G. Ins. Co.*, 85 Hun, 31.) Under no circumstance could the assured be relieved from the necessity of giving immediate notice of the loss and service of sworn proofs within sixty days, unless the defendant, with full

knowledge of all the facts, had repudiated the alleged contract and refused to pay any loss thereunder; and the charge of the court that if the agent claimed after the fire that no contract of insurance had been made, that was a waiver of notice and proofs of loss, was error. (*Bush* v. *W. F. Ins. Co.*, 63 N. Y. 531; *Van Allen* v. *F. J. S. Ins. Co.*, 64 N.Y. 469; *Blossom* v. *L. F. Ins. Co.*, 64 N. Y. 162; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Smith* v. *N. Ins. Co.*, 60 Vt. 682; *De Grove* v. *M. Ins. Co.*, 61 N. Y. 594; *Tayloe* v. *M. F. Ins. Co.*, 9 How. [U. S.] 390; *Grattan* v. *M. L. Ins. Co.*, 80 N. Y. 281; *Boyd* v. *C. R. Ins. Co.*, 70 Iowa, 325.) The evidence upon the part of the plaintiff did not authorize a jury to find a refusal on the part of Hobart to issue a policy or pay the loss, sufficient to relieve Hicks from the necessity of giving notice and making proof of loss, even had Hobart been authorized to bind the defendant by such refusal. (*Shank* v. *G. F. Ins. Co.*, 4 App. Div. 522.) The trial court erred in refusing to receive evidence that defendant had given special instructions to Hobart not to write any insurance upon the property of Hicks.. (*S. Ins. Co.* v. *Jamieson*, 79 Iowa, 245; Lawson on Presumptive Ev. 53, 60; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; *Hartwell* v. *Root*, 19 Johns. 345.)

*John A. Barhite* for respondent. Hobart, the agent of the defendant, had authority to make a contract to issue a policy, and such contract was binding upon the defendant. (*McMaster* v. *State*, 108 N. Y. 542; *Ziehen* v. *Smith*, 148 N. Y. 558; *Ellis* v. *A. C. F. Ins. Co.*, 50 N. Y. 402; *Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171; *Van Loan* v. *F. M. F. Ins. Assn.*, 90 N. Y. 280; *Manchester* v. *G. Assur. Co.*, 151 N. Y. 88; *Hubbell* v. *P. M. Ins. Co.*, 100 N. Y. 41; *De Grove* v. *M. Ins. Co.*, 61 N. Y. 594; *Ruggles* v. *A. C. Ins. Co.*, 114 N. Y. 415; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356.) The refusal of the court to nonsuit the plaintiff upon the ground that there had been no service of notice or proofs of loss was correct. (*Shaw* v. *R. L. Ins. Co.*, 69 N. Y. 286; *Young* v. *Hunter*, 6 N. Y. 203; *Robinson* v. *Frank*, 107 N. Y. 655;

*Tayloe* v. *M. F. Ins. Co.*, 9 How. [U. S.] 390; *Boyd* v. *C. R. Ins. Co.*, 70 Iowa, 325; *Grattan* v. *M. L. Ins. Co.*, 80 N. Y. 281.) The evidence in the case was sufficient to authorize the jury to find that Hobart refused to issue a policy and repudiated his agreement. (*Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *People ex rel.* v. *Barker*, 152 N. Y. 417; *S. L. Ins. Co.* v. *McCain*, 96 U. S. 84; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 392; *Hyatt* v. *Clark*, 118 N. Y. 563.) The trial court did not err in refusing to receive evidence that defendant had given special instructions to Hobart not to write any insurance upon the property of Hicks. (*Ruggles* v. *A. C. Ins. Co.*, 114 N. Y. 415; *S. Ins. Co.* v. *Jamieson*, 79 Iowa, 245; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5.) The evidence was submitted to the jury in a clear and impartial charge without error. (*McGinley* v. *U. S. L. Ins. Co.*, 77 N. Y. 495; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38; *Mussoth* v. *D. & H. C. Co.*, 64 N. Y. 524; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 25; *De Grove* v. *M. Ins. Co.*, 61 N. Y. 594; *Priebe* v. *K. B. Co.*, 77 N. Y. 597; *Carroll* v. *C. O. Ins. Co.*, 40 Barb. 292; *Post* v. *A. Ins. Co.*, 43 Barb. 351; *Pitney* v. *G. F. Ins. Co.*, 65 N. Y. 6; *Ruggles* v. *A. C. Ins. Co.*, 114 N. Y. 415.)

Parker, Ch. J. We are agreed that the verdict of the jury establishes that on the 30th day of December, 1893, defendant's agent Hobart had a conversation with Colonel Hicks, plaintiff's assignor, the legal effect of which was to create a contract of present insurance in the sum of $2,500.00 upon property of Colonel Hicks, which was consumed by fire two days later. The agreement that the contract was one of present insurance accords with the allegations of the complaint, the theory of the counsel as shown by their method of trial and the charge of the court. That position cannot be attacked from any source, for either that which was said operated to create a contract of present insurance, or else no contract was ever made binding upon the defendant. The evidence tended to show a contract to insure, and nothing

else.    It is not pretended that a contract of any kind between
these parties was made after the conversation of December
30th.    The jury have found that the defendant's agent said
to Hicks, after a general discussion on the subject of insuring
the property, " you are insured from noon on the 30th day of
December, 1893, to noon of December 30th, 1894." The
legal effect of this answer to the application for insurance
made by Col. Hicks was to create a complete, binding agree-
ment for insurance for the period named, upon which he was
entitled to recover for the damages sustained by the fire had
he made performance on his part. (*Ruggles* v. *American
Central Ins. Co. of St. Louis,* 114 N. Y. 415.) This contract
of insurance, although verbal, embraced within it the pro-
visions of the standard policy of fire insurance, which the
legislature in its wisdom formulated for the protection of both
insured and insurer.    It is usual for the company to issue a
policy of insurance evidencing the contract between the par-
ties ; but the policy accomplishes nothing more than that, for
when the contract is entered into between the agent and the
owner, whether the binder be verbal or in writing, it includes
within it the standard form of policy and the contract is a
completed one. (*Ruggles Case, supra ; Lipman* v. *N. F. Ins.
Co.,* 121 N. Y. 454; *Karelsen* v. *Sun Fire Office,* 122 N. Y.
545 ; *Underwood* v. *Greenwich Ins. Co.,* 161 N. Y. 413.) In
the three cases last cited the binder had been reduced to writing ;
but there is no distinction whatever in principle between those
cases and the one at bar, for in each there is a binding con-
tract to insure, and necessarily according to the only form of
insurance contract authorized by the laws of this state.    The
law reads into the contract the standard policy, whether it be
referred to in terms or not.    In *Lipman's Case (supra)* Judge
ANDREWS, in speaking of the construction to be put upon the
binding slip issued in that case, said : " The construction is,
we think, the same as though it had expressed that the pres-
ent insurance was under the terms of the usual policy of the
company to be thereafter delivered." And in *Karelsen's*
case the court said : " While the binding slip contained none

of the conditions usually found in insurance policies, the contract evidenced by it was the ordinary policy of insurance issued by the company. So that, in any construction of the contract, it must be regarded as though it had expressed that the present insurance was under the terms of the usual policy of the company to be thereafter delivered." So that all this plaintiff had to do in order to recover in this action, aside from showing a loss by fire and compliance on her part with the conditions of the contract, was to prove the making of the contract. This was accomplished by proving the conversation between her assignor and the agent; for the conversation disclosed the sum for which the property was to be insured, the amount of premiums and the period of insurance, and the statute provided for all of the other conditions of the contract of insurance. Neither party to it had the right to add to, or take from, the requirements of the legislature in that regard. The making of the contract the plaintiff proved to the satisfaction of the jury, and she did not attempt to prove anything more. This the trial court, as well as the counsel, understood, and the case was tried upon that theory. It has been discovered in this court, however, that the judgment against the defendant cannot be sustained if this action be now treated in accordance with the theory that induced its commencement and upon which it was tried, namely, that the plaintiff's assignor made a valid contract of insurance with the defendant by virtue of which this plaintiff, as assignee, is entitled to recover to the extent provided for by the policy for the damages sustained by her through the destruction by fire of the building insured. The error which calls for a reversal of the judgment, if this be treated as an action on the contract, lies in the trial court's charge to the jury, in effect, that, as matter of law, it was not necessary for the insured to present to the defendant proofs of loss in accordance with the requirements of the standard policy. To avoid this result it is proposed in the dissenting opinions not only to set at naught the many decisions of this court, holding that on an appeal a case must be disposed of

37

upon the theory upon which it was tried (*Snider* v. *Snider*, 160 N. Y. 151; *Stephens* v. *Meriden Britannia Co.*, 160 N. Y. 178; *People ex rel. Warschauer* v. *Dalton*, 159 N. Y. 235; *Drucker* v. *Manhattan Ry. Co.*, 106 N. Y. 157; *Baird* v. *Mayor, etc.*, 96 N. Y. 567), but, also, to decide that growing out of this contract the plaintiff had another cause of action, the maintenance of which did not require the service of proofs of loss. Hence, it is claimed that, by treating the case as having been tried upon that theory, the court may avoid reversing the judgment, for in such a case it would have been unnecessary to charge that the service of proofs of loss was essential to recovery. This newly-discovered cause of action is said to spring out of the promise made at the time the contract was entered into, that the defendant would deliver to the insured evidence of the contract in the shape of a policy of insurance. The contract was completed at the moment the agent said, " you are insured from noon on the 30th day of December, 1893, to noon on the 30th day of December, 1894 " (*Ruggles* v. *Amer. C. Ins. Co.*, *supra*), and it is agreed by every member of this court that the defendant is liable to the plaintiff on the contract thus made in the full amount of the policy, if the damage was sustained in the manner referred to in the policy, and plaintiff performed the conditions imposed upon him by it. But it is said that he may recover either on the contract, or, instead, if he elects, on the ground that the defendant failed to deliver to him written evidence of the contract, *i. e.*, a policy of insurance.

If the case were one where the written evidence of the contract had to come into the possession of the plaintiff before recovery could be had thereon, then it is true that an action in equity might be brought, praying for a delivery of the policy that the defendant withheld, and further demanding that upon the policy delivered in pursuance of the decree the plaintiff should have judgment in the amount specified in the policy for her damages by fire, and even then the plaintiff would have to abide by the terms of the policy, delivery of which the judgment should decree. But that is not this case at all.

To enable her to recover it was not necessary for this plaintiff to have physical possession of the policy which the agent promised to give her assignor. (*Ruggles Case, supra.*)  Her action was not founded upon a policy, but upon the contract of insurance made upon the 30th day of December, which, as both parties agreed, was to begin at noon on that day, no matter when the policy, which the parties intended should furnish evidence of the contract, should be delivered.  The action was brought, tried and decided upon that theory, and no one disputes that the judgment could in this court stand upon that theory had the trial court charged the jury correctly in relation to the necessity of serving proofs of loss. It is apparent, therefore, that the plaintiff sustained no damage by reason of the defendant's failure to furnish her assignor with written evidence of the contract.  Had the promise been kept, the plaintiff might not have been obliged to call her assignor to prove the contract, thus subjecting him, as it turned out, to be confronted with impeaching testimony ; but neither the plaintiff nor her assignor was otherwise damaged, for he found no difficulty in proving a contract to the satisfaction of the jury.  The possession of the promised policy, therefore, would have been a convenience possibly, but nothing more.

Plainly, therefore, it is not true that the plaintiff suffered damage in the amount of the contract of insurance by reason of the failure of the defendant to deliver a policy reciting the terms of the contract entered into, and hence the judgment cannot be affirmed on the ground that the plaintiff sustained damages in the sum of $2,500.00, because the defendant omitted to deliver a policy.  Nor do I think that a sound public policy would sanction the creation of such a precedent even if a legal principle could be found upon which to rest it.

The legislature of the state of New York has prescribed a standard form of policy for the protection of both insurer and insured.  It contains provisions specially protecting the insured from harsh methods by insurance companies.  On the other hand, it provides that which experience has shown to

be necessary in order to protect insurance companies from being victimized through fraud, and among the conditions which the legislature in its wisdom has caused to be incorporated into the standard policy is one making it necessary that the insurer shall have immediate notice of the facts and circumstances of the fire; another that within sixty days the owner shall present proofs of loss, duly verified, in which shall be stated the circumstances of the fire and the value of the property destroyed and various other things which it is deemed important that insurance companies should know before being called upon to adjust a loss; still another provides that no local agent shall have the power to waive any of these written conditions, except by a writing. It is unnecessary to present the reasons which induced the legislature to require these conditions precedent to a recovery upon a policy of insurance; it is sufficient for our purpose that the legislature declared that it should be so, and we should see to it that the general trend of our decisions is towards the enforcement of the legislative command instead of its nullification. This plaintiff had the right, as it is conceded on all hands, to recover on the contract of insurance which her assignor made with the defendant's agent, whether a policy was subsequently delivered to him or not; but as the standard policy was necessarily a part of the contract, he should be required to comply with the conditions of that policy and give notice of the facts and circumstances of the fire and present proofs of loss duly verified. The view taken by some of my brethren, however, is that it was unnecessary to give notice of the fire and present proofs of loss within sixty days, or at any other time, because, it is said, such an action need not be treated as on a contract of insurance, but on a contract to give a policy, which has not been carried out, and, therefore, prior to beginning suit, which may be done at any time within six years instead of one year, as provided in the standard policy, the insured has nothing whatever to do when he sustains a loss by fire but lie by until, as in this case, several months have passed, or, in some other case, until years

have gone by, without giving the company notice of the fire
or any proofs of loss whatever; he may then bring a suit
claiming that two days, or less or more, before the fire, the
defendant's local agent, without receiving any premium,
agreed to, but did not, issue a policy, for which defendant is
liable to plaintiff in the amount of the sum for which it was
agreed that the policy should issue. If such a procedure
should be sanctioned by this court, then might an insurance
company be mulcted in damages without having had an oppor-
tunity to investigate promptly the origin of the fire and the
value of the thing destroyed, and thus would the door be
opened wide for the perpetration of fraud.

It is said that if the foregoing argument seems not to be
defective upon its mere reading, it is nevertheless so because it
leaves out of consideration the decisions of this court in *Ellis*
v. *Albany City Fire Insurance Co.* (50 N. Y. 402); *Angell*
v. *Hartford Fire Insurance Co.* (59 N. Y. 171); *Van Loan*
v. *Farmers' Mutual Fire Insurance Assn.* (90 N. Y. 280).
But the situation which those cases were designed to meet no
longer exists.   During the period of time in which they and
others were decided, and down to the year 1886, each insur-
ance company was at liberty to insert such provisions in the
policy of insurance issued by it as it deemed best.   The result
was that there was no uniformity in policies of insurance, and
when loss by fire occurred, prior to a delivery of the policy, it
became necessary for the assured to secure possession of the
policy, either by its voluntary delivery to him by the officers
of the company, or in pursuance of a decree in a suit in equity
for specific performance; thereon he could found a judg-
ment for the damages sustained by the fire, or he was
allowed to recover the damages sustained for a breach of the
contract, which was treated as a contract for the delivery of a
policy.   The last one of the cases cited was decided in 1882;
four years later the legislature, by chapter 488 of the Laws
of 1886, enacted and provided for a uniform policy of fire
insurance, to be made and issued in this state, by all insur-
ance companies taking fire risks on property within this state,

**294**     Hicks *v.* British Am. Assur. Co.     [Mar.,

Opinion of the Court, per Parker, Ch. J.     [Vol. 162.

to be known and designated as the "Standard Fire Insurance Policy of the State of New York." Upon the passage of this important legislation the policy of insurance was no longer of special moment except as evidence that a contract to insure had been made; for it was no longer competent for the parties to incorporate into the policy any provisions whatever, outside of those embraced within the terms of the standard policy, and thereafter the contract to insure was by common consent of the profession and the courts scientifically treated as a contract of insurance, and not, as formerly, a contract to issue a policy, as an examination of the authorities in this court from the *Ruggles* case down will show.

It is suggested that an affirmance of the judgment might also be placed on the ground that while the action was brought upon the contract of insurance, it was made to appear upon the trial that the defendant by its conduct waived service of proofs of loss and, hence, that it was not error for the court to charge in effect that the plaintiff could recover without showing that she had complied with the terms of the contract in that respect. If the defendant had by its conduct rendered unnecessary the service of proofs of loss the contention would, of course, be well founded. But it had to do something in order to lose the benefit of the stipulations in its contract. At the outset it should be said that the defendant or its officers never did anything whatever until after this action was commenced. Neither the plaintiff nor her assignor, so far as this record discloses, ever addressed any letter or other communication to the defendant or any of its officers prior to the commencement of this action. What then is the alleged waiver founded upon? Why upon the action of the local agent who made the contract of insurance in denying that he ever made such a contract. An unstable and worthless foundation surely in view of the fact that under the standard policy an agent is without power to waive any of the conditions, as this court has time and again held. ( *Van Allen* v. *Farmers' Joint Stock Ins. Co.*, 64 N. Y. 469 ; *Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356 ; *Bush* v. *Westchester Fire Ins. Co.*,

63 N. Y. 531 ; *De Grove* v. *Metropolitan Ins. Co.*, 61 N. Y. 594.) While it is conceded that the local agent had no power in such a case to waive the condition regarding proofs of loss, yet it is contended that he did in fact waive it by omitting to deliver the policy when called for by the owner of the building after the fire, and by denying that he had ever made a contract to insure. Stating the contention in other words, it is that if the agent had tried to waive the conditions of the policy and had promised to do so, he could not have accomplished it, but that by omitting either to do or to say a particular thing he did waive the condition, which is to say that an express waiver would not be effectual, but an implied one would.

As the statement of the proposition seems to furnish the answer to it, I pass on to such of the defendant's acts as are relied upon to constitute a waiver. It is not pretended that prior to the commencement of this action the plaintiff or her assignor ever notified the defendant company that she claimed that the company had insured the burned building, so there is nothing before action brought upon which to base a claim that the defendant waived proofs of loss. But it is said that when the suit was brought and the defendant by its answer denied the allegations of the complaint, it in some way made good the attempted waiver of the agent, although it was absolutely void before. The answer is that if the plaintiff had not a complete cause of action against the defendant when the summons was served, no obstacles have been removed from her path by the denials in the defendant's answer of the allegations of her complaint. If a party has not a good cause of action before commencing suit, it is safe to say that he will not get one by an answer of the defendant which contents itself with denying the existence of the facts alleged in the complaint. It is plain, therefore, that the plaintiff is without a basis for a recovery upon this cause of action, if a new trial be granted, because neither she nor her father, the assignor, have presented to the defendant any proofs of loss, nor was service of proofs of loss waived by the defendant; and while such a

result may or may not be in the interest of justice, in this particular case there can be no doubt that the measure of injustice done, if any, will be far less than would necessarily ensue from a decision putting a premium upon insurance obtained without a policy, by making it possible to recover for the damages sustained through a fire, by an action commenced at any time before the six years' Statute of Limitations shall have run, and that too without giving the company notice of the fire or serving it with proofs of the loss, thereby preventing it from being able to inquire about the facts and circumstances attending the fire until months or years after the happening of it. This would in many cases effectually prevent the company from acquiring any information whatever.

It follows, if the views expressed be sound, that the action is upon a contract of insurance and not one for damages resulting from a failure to deliver a policy, and, hence, that proofs of loss were necessary in the absence of a waiver thereof by the defendant, of which there is no proof, and the failure to so charge was error, calling for a reversal of the judgment.

The judgment should be reversed.

Landon, J. (dissenting). We have no jurisdiction to inquire whether there was any evidence tending to support the verdict, but must limit our review to the alleged errors of law which, if found to be well assigned, may possibly have misled the jury.

The complaint may be construed as seeking either a recovery of damages for the breach of a contract to issue a policy of insurance, or to enforce its delivery and to recover thereon as if actually delivered. Two questions of law are presented by the defendant's exceptions; one respecting the omission to serve proofs of loss, and the other, the exclusion of evidence.

The following facts were established by the verdict: On the 30th of December, 1893, George C. Hicks, the plaintiff's assignor, was the owner of a malt house in the village of Seneca Falls, upon which was other insurance. He applied.

on the evening of that day to Melmoth Hobart, who was the local agent of several insurance companies, including the defendant. He was authorized by the defendant to make agreements for policies of insurance and to issue policies therefor of the form of the standard policy of the state of New York. He was furnished by the defendant with blanks for the purpose, which he was authorized to fill, and, by countersigning and delivering, to make completed obligations of the defendant. Hobart agreed to issue to Hicks two policies of insurance upon the malt house, each for $2,500, one by the defendant and the other by a Westchester company, each for one year from noon of that day, for the premium of $31.25 for each policy. Hicks offered to pay the premiums then, but Hobart said that he need not do so until he should deliver him the policies, which he would not do that evening, as he wished to see a policy issued upon the malt house by the agent of the other companies, in order to make his description of the property identical with that in the other policies, but would attend to the matter the next day. He then said to Hicks, " You are insured from noon on the 30th day of December, 1893, to noon on the 30th day of December, 1894." The next day was Sunday, and Monday following was a holiday, and Hobart did not make out the policies. Early in the morning of Tuesday, January 2, 1894, the malt house was destroyed by fire. The loss was great enough to equal the amount of all the other insurance and that here in question. The day after the fire Hicks tendered to Hobart the premiums and demanded the policies. Hobart refused to take the tender, and also refused to issue the policies. Hicks also demanded blank proofs of loss. Hobart refused to give him any, saying that he would not say whether he would receive the money for the premium or refuse it; that he had no blank proofs of loss; that he could do nothing about the matter; that he had written to his companies, and that, upon getting notice from them, he would let Hicks know; that he could give no definite answer in reference to the policies until he heard from his companies. Hicks then said, " We may

38

take it as conclusive that you will not receive the money," and Hobart made no reply. No further communication took place. No proofs of loss were served. This action was brought seven months after the fire. The oral contract was complete in all its details, and Hicks was entitled to the policy. (*Ellis* v. *Albany City Fire Ins. Co.*, 50 N. Y. 402; *Angell* v. *Hartford Fire Ins. Co.*, 59 N. Y. 171; *Van Loan* v. *Farmers' M. Fire Ins. Assn.*, 90 N. Y. 281; *Ruggles* v. *Am. Cent. Ins. Co.*, 114 N. Y. 415.)

The standard policy of the state of New York, which was the form of policy the defendant agreed to issue, requires the insured to furnish the insurer proofs of loss within sixty days of the fire. The court charged the jury: " I charge you, as a matter of law, if you find from the evidence that a contract was made to issue a policy, and when Mr. Hicks called upon the agent and tendered him $62.50 and demanded his insurance policy, the agent refused to give it to him or to pay the loss, upon the ground that the company was not liable, because it had not agreed to issue a policy, then that was a waiver of proofs of loss on the part of the insurance company." To this the counsel for the defendant excepted, whereupon the court said, " That if the agent claimed that the contract was not made, it was not necessary for the plaintiff or Mr. Hicks to furnish any proofs of loss." To this the defendant excepted, and asked the court to charge the jury that Hobart, as the local agent of the defendant, had no power to waive the condition of the contract of insurance requiring proofs of loss. The court refused and defendant's counsel excepted. The standard policy provides that no agent of the company shall have power to waive any provision or condition of the policy, except such as by the terms of the policy may be the subject of agreement indorsed upon or added to it, and in every such case the waiver must be in writing, indorsed upon or annexed to the policy.

Treating the case as if under the policy, Hobart had no power to waive the proofs of loss. (*Van Allen* v. *Farmers' J. S. Ins. Co.*, 64 N. Y. 469; *Quinlan* v. *Prov. Wash. Ins. Co.*,

133 N. Y. 356; *Bush* v. *Westchester Fire Ins. Co.*, 63 N. Y. 531.) It does not follow, however, that this is a reversible error. If the action were solely to enforce the delivery of the policy and to recover thereon as if actually delivered, then service of proofs of loss would be necessary, since in such case the rights of the insured would depend upon his performance of the conditions expressed in the policy as precedent to his right of recovery. (*De Grove* v. *Metrop. Ins. Co.*, 61 N. Y. 594.) The same would be true if the action were to recover upon an agreement for temporary insurance intermediate the application for it, and the decision of the insurance company, whether it will issue a policy, as in the cases of "binding slips." (*Lipman* v. *Niagara Fire Ins. Co.*, 121 N. Y. 454; *Karelsen* v. *Sun Fire Office*, 122 N. Y. 545.) In the two cases last cited the insurance company did not repudiate the binding slip, but claimed to have canceled the contract according to its terms. Recovery was sought in each case under the contract, and not because the agreement to make it was repudiated. In the case of a binding slip the insured has his written contract; in the case of an oral contract he must show his right to one. In the one case the contract speaks for itself, and the action is upon the contract, which for the time being is the policy. In the other case the action may be upon the oral contract, but when the making of the contract is denied and performance by the company, therefore, refused, the action may be for damages for the breach of the contract to deliver the policy as of the date orally agreed upon. The right to the policy is not affected by the fire. (*Ins. Co.* v. *Colt*, 20 Wall. 560; *Lightbody* v. *North Am. Ins. Co.*, 23 Wend. 18.)

We may regard this action as one for the recovery of damages consequent upon the breach by the defendant of its contract to issue and deliver the policy, which, if delivered, would have enabled the plaintiff, by complying with its conditions, to secure indemnity for his loss. If the defendant repudiated the contract to issue the policy, it repudiated its conditions, and, therefore, cannot, without showing that it retracted its

repudiation, insist upon the subsequent performance by the insured of any one of them as a condition precedent to his recovery of the damages accruing to him then or thereafter by the completed breach itself. The defendant did not retract the repudiation of the contract, but by its answer repeated and confirmed it. (*Shaw* v. *Republic Life Ins. Co.*, 69 N. Y. 286; *Knickerbocker Life Ins. Co.* v. *Pendleton*, 112 U. S. 696; *Meyer* v. *Knickerbocker Life Ins. Co.*, 73 N. Y. 516; *Robinson* v. *Frank*, 107 N. Y. 655; *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How. [U. S.] 390; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351.)

It would be a useless act for the plaintiff to serve proofs of loss in order to charge the defendant with liability under a contract which it repudiated altogether, and to hold otherwise would be to absolve the offender and punish its victim. As the plaintiff did not commence this action until after seven months after the fire, no question arises whether the action for full damages could accrue upon the breach earlier than under the contract.

If we treat the case as if the policy had been issued, it was not within Hobart's power thereafter to waive proofs of loss, because his power was limited to the making of the contract and delivery of the policy, and did not extend to a subsequent waiver of the conditions which the policy imposed upon Hicks. But as his power was complete over the making of the contract and delivery of the policy, it embraced as its necessary incident power to repudiate the oral contract and thereupon to refuse delivery of the policy, and hence his repudiation and refusal, if made, were the acts of the defendant. In *Ellis* v. *Albany Ins. Co.* (*supra*) the court not only so held, but also considered the suggestion, renewed in this case, that such a rule would enable the agent to perpetrate a fraud upon the company by making preliminary contracts, when the company only intended to be bound by writing, and answered it by saying that that was no reason for depriving third persons of the benefit of contracts entered into with the agent. We cannot review the finding that the defendant,

through Hobart, did repudiate the contract and refuse to issue the policy.

The charge of the court placed the waiver of the proofs of loss and the lack of necessity to furnish them upon the same finding of facts by the jury. The court was wrong as to the waiver of the proofs, if plaintiff had no right of recovery except under the policy; but upon the same facts the court was right in saying, if the agent claimed that no contract was made, they were not necessary.

As the jury found the facts which made the service of proofs of loss unnecessary, what was said as to waiver was unimportant, and not reversible error.

It is said that the plaintiff sustained no damages by the defendant's breach of its contract to deliver the policy, because she had her remedy upon the oral contract to insure. It could be said with equal force that she had no remedy upon the oral contract to insure because she had her remedy for damages. Obviously she could stand upon all the causes of action which the facts pleaded permitted, and finally avail herself of the one proved. The form of the policy is fixed by statute, but that simply affects ease of proof, and not the remedy upon the proofs.

It was a disputed question of fact upon the trial whether in the interview between Hobart and Hicks, when the oral contract was made, Hobart agreed to place one policy in the defendant company. Hicks affirmed it, and Hobart denied it, and testified that the name of the defendant was not mentioned. The offer of his further testimony to the effect that he had received instructions from the defendant not to insure the plaintiff was excluded by the court upon plaintiff's objection. The evidence was offered in corroboration of Hobart's testimony, the defendant's theory being that having received such instruction, the presumption followed that Hobart obeyed it, and that the defendant was entitled to cast this presumption into the scale. Hobart did not communicate the instruction to Hicks and thus it could not affect him, unless the circumstance in its nature tended to support Hobart, or

. 302　　　Hicks v. British Am. Assur. Co.　　　[Mar.,

Dissenting opinion, per Werner, J.　　　[Vol. 162.

to discredit Hicks. That Hobart received the instruction was immaterial unless he obeyed it. That is not proved by the instruction itself, nor does it tend to prove it.

It may be conceded, as the learned counsel for the appellant insists, with the support of authority, that the presumption is that every man, in his private and official character, does his duty, but this presumption is a shield from attack upon the charge of violation of duty — not a weapon of offense. If his company should sue Hobart for disobedience to its instructions he could rely upon this presumption until the contrary should be proved; but if he should sue his company for some promised reward of obedience the presumption would not avail him; much less can it be used as affirmative evidence against a third person dealing at arm's length against both principal and agent.

In *Fitzgerald* v. *Dressler* (7 C. B. [N. S.] 374) A., through a broker, sold seed to C., who, through the same broker, sold the seed, at an advanced price, to D. D. was to pay C. before C. was to pay A. D. sent his clerk to the broker for the delivery order, and the broker took the clerk to A., who gave the order to the clerk on his promise that D. would pay A. A. sued D. The court held that there was no presumption that the clerk told D. that he had made the promise. The case, in principle, is like the one before us.

The judgment should be affirmed, with costs.

Werner, J. (dissenting). It seems to me that we cannot hold that an action may not be brought for the breach of an agreement to insure without distinctly overruling *Ellis* v. *Albany City Fire Insurance Company* (50 N. Y. 402); *Angell* v. *Hartford Fire Ins. Co.* (59 N. Y. 171); *Van Loan* v. *Farmers' M. F. Ins. Assn.* (90 N. Y. 281), and *Post* v. *Ætna Ins. Co.* (43 Barb. 351). I do not think that the evidence wholly justifies the statement that the action was clearly tried upon the theory of an executed contract of insurance. It is true that the complaint, and the evidence given in support thereof, were undoubtedly appropriate to such an action; but it does not

follow that they were, therefore, not appropriate to an action for damages arising out of the alleged breach of the contract to insure. It frequently happens that the same pleadings and proofs will support different causes of actions which are governed by inconsistent legal principles. I am prepared to agree with Chief Judge PARKER in holding that under the law providing for the standard policy it is the logical rule to decide that every contract for insurance made with an authorized agent, whether the same be oral or written, constitutes a valid contract of insurance which requires nothing to complete it except the written evidence of its terms and conditions. The cases of *Lipman* v. *N. F. Ins. Co.* (121 N. Y. 454); *Karelsen* v. *Sun Fire Office* (122 N. Y. 545), and *Underwood* v. *Greenwich Ins. Co.* (161 N. Y. 413), cited by him, clearly demonstrate that this is the more recent view of our court. But that is very different from deciding that, when a plaintiff claims that a contract for insurance has been made and broken, and a defendant insurance company denies that any such contract was ever made, a plaintiff can recover only upon the theory of an executed and completed contract. Such a rule would result in exempting insurance companies from the application of one of the most familiar principles of the law of contracts. It is a rule of universal application that when a party to a contract refuses to execute it, the other party thereto may treat it as rescinded and sue for the breach. (Beach on Modern Law of Contracts, sec. 788.) In such a case as this the difference in the character of the action is one of form rather than of substance, because the recovery in either case would be the same. But let us assume that it is now the established law that a party claiming under an oral or a written memorandum for insurance must recover, if at all, upon the terms and conditions of a completed policy which are to be read into his tentative contract. It is conceded that Hobart was the duly authorized agent of the defendant for the purpose of issuing policies of insurance. He was provided with blanks for that purpose, which needed only to be countersigned by him to make them executed and binding contracts.

The right to issue policies included the right to refuse to issue them.   Hobart's agreement to issue a policy was the act of the company.   Whose act was Hobart's refusal to issue a policy after he had bound the company by his agreement to issue one?

To my mind there is no escape from the conclusion that if he acted for the company in making the agreement, he acted in the same capacity in breaking it.   There was a dispute of testimony as to whether he ever made such an agreement with plaintiff's assignor.   This presented a question of fact which the jury have settled in favor of the plaintiff.   If, then, we treat this as an action upon the policy, and hold the defendant responsible for the acts of Hobart, what is the effect of such acts?   The answer seems obvious.   If the defendant, through its proper officers, had issued a policy of insurance, and after a loss under the same, had denied its liability on the ground that it never made any such contract, it would be a distinct waiver of the right to demand proofs of loss.   (*Shaw* v. *Republic Life Ins. Co.*, 69 N. Y. 286; *Stokes* v. *Mackay*, 147 N. Y. 223; *People* v. *Empire Mut. Life Ins. Co.*, 92 N. Y. 105; May on Insurance, sec. 469; Porter on Insurance [American Notes by Darrach, 1889], star page 194; Richards on Ins. sec. 81; *Grattan* v. *Met. Life Ins. Co.*, 80 N. Y. 281; *Payn* v. *Mutual Relief Society*, 6 N. Y. S. R. 365; *Knickerbocker Life Ins. Co.* v. *Pendleton*, 112 U. S. 696; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 113.)

Is the result any different because these things were done by an agent?   As we have seen, this agent had authority to ·issue, and, therefore, to refuse to issue policies.   His agreement to issue a policy was the act of his principal.   His refusal to issue a policy after he had agreed to do so falls within the same category.   Under these circumstances the refusal of the agent has the same effect as though it had actu· ally been made by the principal.   Indeed, for the purposes of the particular act, he was the principal.   (*Goodwin* v. *Mass. Mut. Life Ins. Co.*, 73 N. Y. 490–491.)

But it is suggested that the policy provides that no agent

shall have power to waive any of the conditions thereof. This is undoubtedly true after a policy has been issued, and the limited powers of the agent are spent. But in the case before us, the acts of the agent were within the scope of his authority, for until the policy was actually issued he was the *alter ego* of the defendant. At every instant, within the period covered by the negotiations between Hobart and the plaintiff's assignor, the former was acting within the scope of his authority. As the case stands, it is just as though the defendant itself had refused to issue a policy after it had agreed to do so. Under these circumstances the plaintiff and her assignor were not required to present proofs of loss, because they had been absolved from this duty by the acts of the defendant.

If these views are adopted, it follows that the charge of the trial court was substantially correct, wherein it stated that it was not necessary for the plaintiff to serve proofs of loss; and by the same rule it would seem to follow that the instructions relating to the waiver by Hobart were harmless because they were immaterial.

GRAY, O'BRIEN and CULLEN, JJ., concur with PARKER, Ch. J., for reversal. LANDON and WERNER, JJ., read for affirmance and HAIGHT, J., concurs with LANDON, J.

Judgment reversed, etc.